JOHN N. RACE, appellant,

*v.*

CHARLES GROVES and WILLIAM L. EMMONS, respondents.

Complainant held the lease of a storehouse from Groves and occupied it himself as a country store. The lease gave him the option of buying the premises at any time during his term, at whatever price might be offered Groves therefor. Groves offered to sell to Emmons and entered into a written agreement therefor, of which complainant was ignorant until after the agreement had been executed. Emmons had no knowledge of complainant's rights until notified thereof by the latter; whereupon, on January 6th, 1886, he bought out and paid complainant for his stock of goods in the storehouse, and on March 25th, 1886, complainant surrendered possession of the premises to him. Complainant never stated that he intended to insist on a conveyance of the lands, under the provisions of the lease, until the service of the injunction restraining the transfer to Emmons.—*Held*, that the complainant is estopped, by his acts and conduct towards Emmons, from interfering with Emmons's obtaining a conveyance of the premises from Groves.

On appeal from a decree advised by Vice-Chancellor Bird, who filed the following conclusions:

This bill is for specific performance of an agreement to convey lands. The complainant held a lease from Groves for a lot of land on which was a building designed and used for a store. There was a provision in the lease that if Groves should have an offer to purchase the lot he should give Race the first refusal at the price named. Groves offered to sell the lot to Emmons, and Emmons and Groves entered into an agreement for the sale and purchase of it. Groves did not make this offer known to Race, nor did Race learn of it until after the agreement between Groves and Emmons had been executed. There is no evidence

that Emmons had any information which should have put him on inquiry as to Race's rights. It is true that Groves at first told Emmons he could not sell until he saw Race, but nothing appears beyond this.

There is but little, if any, doubt as to the right of Race against Groves. The important and interesting question is whether, under the proofs, Race is entitled to a decree against Emmons. The sale was made to Emmons about Christmas, 1885. Race learned of the fact, and in about two weeks called upon Emmons for the purpose of having an understanding with him about the transaction. Race says he went to Emmons to inquire of him whether or not he would give up the property, and if he would not, then to sell him his stock of goods in store on the premises. His language is :

"I said, ' How do you feel about giving up the property?' he said, ' Well, the way you have been treated, I feel like giving up, unless my son wants it; ' he said he would come and see me the next day ; he came the next day and said his son would not give it up ; I then sold him my goods there because I had no place there to sell them in ; but I expected to hold my claim to the property ; I told Emmons I expected to get redress from Groves but I didn't know in what way ; I sold the goods to Emmons, gave up the possession of the store to him, and supposed that Emmons intended to sell the goods in that store ; sold the goods to Emmons for between $1,100 and $1,200."

The sale was in writing. It appears that Emmons had no other place for these goods, nor any use for them, except to sell them in this store. This sale of goods was made to Emmons on January 6th, 1886, and on March 25th thereafter Race delivered possession of the goods and of the store to Emmons. At this time no conveyance by deed had been made, that act having been enjoined by an order of this court.

There is no proof that Race ever said to Emmons that he intended to insist upon a conveyance of the title from Groves until the service of the injunction. Before this they had met at least twice with special reference to this transaction—once at Emmons's house, when Race called on him, and the next day thereafter, when Emmons called on Race at his house, according to

Race v. Groves.

promise.   On this last occasion the agreement between them for the sale and purchase of the store goods was executed.

These are the principal facts in the case as sworn to by the complainant.   As I read them they create the unqualified conviction that Race became bound to Emmons not to make any claim for the title to these lands, because he did not make that claim then and there.   It seems to me, beyond all peradventure, that Race is now estopped.   There is no room for hesitation in saying that Race understood in his own mind that Emmons bought his goods with the expectation of consummating the purchase of the land by deed from Groves.   And in addition to this, and the absence at that same time of any claim by Race, a witness says that Race called upon him to draw the agreement for the sale of the goods, and that he then asked Race if he had bought Emmons out, to which Race replied that he had not, "but that Emmons had bought him out, and that that was the most he cared about."   Emmons swears that Race told him that if he would take his goods he would not build another store, but would move away.   Emmons says that at that time Race made no claim to the land.   And, when recalled, Race says:

"I dealt with Mr. Emmons on the supposition that he expected to hold the property from Groves; I did not tell him that I intended to claim the property."

This seems to be a plain case for the application of the doctrine of estoppel.   Race, knowing that Emmons had agreed for the purchase of the land, went to him and asked him what he thought about giving up his purchase, and told him if he would not, that then he would sell him his stock of goods.   Emmons refused to give up this bargain and purchased Race's goods, entering into an agreement therefor, and after all this, Race accepted from Emmons the whole consideration-money, being over $1,100.   The mind inevitably concludes that it was the duty of Race to say to Emmons that he had agreed with Groves for the conveyance of this land, and that he intended to insist upon the performance of the agreement.   Not demanding his rights then, he cannot be heard now, for the law justly holds

Race v. Groves.

that under such circumstances he waived any rights he otherwise may have had.

Again, it would seem quite evident that Race deliberately waived any claim he had against Groves. It was his duty, on being informed of the sale to Emmons, to make the offer to Groves of the price agreed to be given by Emmons. This was the plain intent of the claim in his lease on which he relies. This he failed to do. He learned of the agreement with Emmons within a week after it had been made, and conversed freely with Groves about it, but instead of offering to pay the $3,000 and demanding a deed, he at once made sale of his goods to Emmons, and made no offer or demand until more than two months thereafter, during all which time he was under no obligations to Groves. These two facts are signal proof of his deliberate intention to waive any rights he might otherwise have had against Groves. Had he promptly made this offer, I think he would have been protected in his claim against Emmons by the wholesome rule laid out in *Haughwout* v. *Murphy, 7 C. E. Gr. 531,* in which it is adjudged that the payment of the purchase-money in good faith is essential in such cases to the protection of the subsequent purchaser.

I will advise a decree dissolving the injunction and dismissing the bill. The defendants are entitled to costs.

*Mr. Geo. O. Vanderbilt,* for appellant.

*Mr. Alan Strong,* for respondents.

Per Curiam.

This decree unanimously affirmed for the reasons given by the vice-chancellor.