DICKINSON WOODRUFF

v.

LOUISA C. WOODRUFF et al.

1. If it be doubtful whether a clause in a deed should be construed to be a covenant or a condition, the courts will incline against the latter construction.

2. Where the following clause was annexed to the *habendum* in a deed of bargain and sale, to-wit, "provided, nevertheless, and upon the following condition, that if the said grantor, A. Dickinson Woodruff, shall survive the said grantee, P. Houstoun Woodruff, he, the said grantor, shall have the right, at any time within eighteen months after the death of the grantee, to purchase-back again all the right, title and interest in said farm, 'Oaklands,' hereby conveyed, at a valuation to be then made by two disinterested persons, one of whom shall be selected by the legal representatives of the said grantee and the other selected by said grantor, in case of disagreement the person so selected may choose a third person," it was held to be a covenant, not a condition.

3. In an indenture of bargain and sale, purporting to be *inter partes*, by which an estate is conveyed to the grantee, if the grantee accept the deed and the estate therein conveyed, though the indenture be not sealed and delivered by him, it is his deed as well as that of the grantor.

4. The general rule, that equity will not specifically enforce the performance of a contract where, from its terms, a right does not arise in favor of each party against the other, and where either party is not entitled to the equitable remedy of specific execution of such obligation against the other contracting party, is subject to the modification, that if the quality originally lacking be subsequently supplied, the enforcement of the contract may be made possible. Such quality may be supplied by filing a bill for specific performance by the party not bound.

5. The specific performance of a contract, which involves the payment of a price, will not be decreed until the price shall be ascertained.

6. The contract mode of ascertaining the price must be pursued when it is specified in the contract. The limit to which the court will go in fixing a price is to ascertain it when the contract simply provides that it shall be fair.

7. The term, "personal representatives," as used in the clause of the deed above mentioned, means those who succeed the grantee in the title of the lands. In this case, the land having been devised in trust, it means the trustee and *cestui que trust*.

8. The person named in the will as trustee having died before the testator, the title to the lands descended to the heir-at-law charged with the trust, and the heir at-law, being the *cestui que trust*, and the trust being an active one, and

·needing the interposition of an independent trustee, the court will appoint one ·in place of the person named in the will.

On bill and answer.

*Mr. Barker Gummere,* for the complainant.

*Mr. George D. Scudder,* for the defendant.

The Chancellor.

George Woodruff, the complainant's father, died in 1846, ·seized and possessed of a farm near Trenton, called "Oaklands." During the previous year he made his last will, by which he devised the possession and use of the farm to his wife, Jean Woodruff, for the mutual benefit of herself and the testator's son, Patrick Houstoun Woodruff, during the wife's life, and after her death, to his four sons, Patrick, Robert, Thomas and Dickinson, in fee as tenants in common, charging the farm, however, with the payment of one-fifth its value for the benefit of his ·daughter Mary. After the death of Jean Woodruff, the provision for Mary was duly made, so that the title to the farm vested in the four brothers in fee, free from encumbrances.

Afterwards, in 1851, Robert and Thomas Woodruff conveyed their respective one undivided fourth interests in the farm to their brother Patrick, and, in 1856, the complainant, Dickinson Woodruff, also conveyed his one undivided fourth part of the farm to Patrick. The complainant's deed to Patrick is *inter partes,* and recites that, " in consideration of various sums of money to him in hand paid," he grants, bargains, sells &c., to Patrick, party of the second part, and his heirs and assigns, all the complainant's right, title and interest in the farm known as ·" Oaklands," to have and to hold the same unto Patrick, his heirs and assigns forever,

" Provided, nevertheless, and upon the following condition : that if the said ·grantor, A. Dickinson Woodruff, shall survive the said grantee, P. Houstoun Woodruff, he, the said grantor, shall have the right, at any time within eight- ·een months after the death of said grantee, to purchase back again àll the

Woodruff *v.* Woodruff.

right, title and interest in said farm 'Oaklands,' hereby conveyed, at a valuation to be then made by two disinterested persons, one of whom shall be selected by the legal representatives of the said grantee, and the other selected by said grantor, and in case of disagreement, the persons so selected may choose a third person."

Patrick Woodruff died in December, 1886, leaving a daughter, Louisa C. Woodruff, his only child, him surviving. He died testate, having by his will appointed his daughter, Louisa, and one Charles P. Stratton, the executrix and executor thereof, and having also by it devised to Charles P. Stratton, in fee, the farm " Oaklands," and bequeathed to him other property upon the following trust:

" For the use and benefit of my dear daughter Louisa Caroline, and her issue, if any she may have, in the manner hereinafter directed, that is to say, in trust, to permit my said daughter, at her choice and pleasure, to reside at and upon my said farm called 'Oaklands," and to take and recover the rents, issues and profits thereof to and for her own use and benefit, she paying the taxes thereon and keeping the farm and buildings in good condition and repair so long as she may choose to reside thereon; and in case she choose not to reside thereon, then in trust to rent and lease the said farm on such terms and conditions, and for such length of time, as my said trustee shall deem most to the benefit and advantage of my said daughter, and collect and receive the rents, issues and profits thereof, and to pay the same from time to time as he may receive the same, after deducting thereout all necessary expenses, unto my said daughter for her own use and benefit; and in further trust, with the consent and approbation of my said daughter (but not otherwise), to sell and convey in fee simple the said farm or any part thereof, and all and every other part of my real estate which may belong to me, to such person or persons, and for such price, and on such conditions, as my said trustee shall deem most advantageous, and as my said daughter shall consent to and approve; and the moneys arising from such sale, to put out at interest, and the interest thereof, from time to time, to collect and receive and pay the same annually, or oftener, if he shall receive the same oftener, unto my said daughter for her own use and benefit; and I do further direct that if my said daughter, being single and unmarried, shall, at any time, deem it necessary and proper to use any part of the principal of said trust fund, then my said trustee shall, whenever she shall request him to do so, pay over to her for her own use, so much of said principal as she shall desire. But if my said daughter should marry, then, during her married life, she is to receive only the interest of said trust fund and shall not have the right to call on said trustee for any part of the principal thereof. But if she should become a widow, then she shall, during her widowhood, have the same right to call for a part of said principal of said trust fund for

her own use, and said trustee shall, on her request, pay over to her so much of said principal as she may request and desire."

He then made provision that if his daughter should die leaving children, the principal of the trust fund should go to them, and if a child of the daughter should die during the daughter's life, leaving children, then those children should take their parent's share, and then continued as follows:

" And in case my said daughter should die without leaving any child or children, or the issue of any child or children, then I direct that all the said trust estate, remaining at her decease, shall go to my three brothers, Robert I. Woodruff, Thomas M. Woodruff and Dickinson Woodruff, in equal shares, to their own use forever; and if any of my said brothers should die during my life, or during the life of my daughter, then said trust estate, that is to say, the share which would have gone to said deceased brother or brothers, if living, shall go to his child or children, if any, in equal parts, and if there be no child or children, then his share shall go to his surviving brothers or brother, if only one be then living."

The trustee, Charles P. Stratton, died during the life of the testator. The brother, Thomas M. Woodruff, also died before the testator, leaving him surviving two children, George and William, who are made defendants in this suit.

The complainant tenders himself as ready to comply in all things, upon his part, with the condition or covenant in his deed to his brother Patrick. The defendant Louisa C. Woodruff refuses to appoint an arbitrator for the purpose of ascertaining the value of the complainant's former interest in the farm.

The bill prays (1) that a trustee may be appointed in the place of Charles P. Stratton, to execute the trust, and especially, as the " legal representative" of Patrick Houstoun Woodruff, to perform, on his part, the terms of the condition or covenant contained in the deed in question, and appoint an arbitrator to agree with an arbitrator to be appointed by the complainant, as to the present value of the former interest of the complainant in the farm " Oaklands," and (2) that the trustee, when appointed, and Louisa C. Woodruff may be decreed to convey such interest to the complainant at the valuation of it which shall be ascertained by the arbitrators to be appointed. It is urged, for the complainant,,

that his claim to a specific performance of the condition or covenant is entitled to special consideration in this court, because, at law, he cannot recover substantial damages for its breach.    The law will not give damages where there is no injury, and there cannot be more than nominal injury, in the eyes of the law, in this case, because he is to give the full value of the interest for its reconveyance to him.    He insists that the property is of inestimable value to him as part of his patrimonial estate about which his affections cling.

It is necessary, first, to determine whether the provision in the deed in question is a condition or a covenant.    If it be a condition, specific performance of it will not be decreed.    A condition differs from a covenant.    The legal responsibility of the non-fulfillment of a covenant is, that the party violating it must respond in damages.    The consequence of the non-fulfillment of a condition, is a forfeiture of the estate.    The grantor may re-enter and possess himself of his former estate.    This court, in a proper case, can enforce the specific performance of a covenant, but it cannot enforce the specific performance of that, in a deed, the non-performance of which works a forfeiture of the estate. *Woodruff* v. *Trenton Water Power Co.,* 2 *Stock.* 489, 508; *Sharon Iron Co.* v. *Erie,* 41 *Pa. St.* 341.    Conditions subsequent, especially when relied upon to work a forfeiture, must be created by express terms or clear implication, and are strictly construed. *Washb. on Real Prop.* 447; 4 *Kent's Com.* 430; *Southard* v. *Central Railroad Co.,* 2 *Dutch.* 13, 20.    If it be doubtful whether a clause in a deed be a covenant or a condition, the courts will incline against the latter construction.    4 *Kent's Com.* 132.    And words in a deed, not in form either a covenant or a condition, will be construed as a covenant rather than a condition.    The parties to this suit have presented the case upon the assumption that the clause in question, in the deed from the complainant to his brother Patrick, is a covenant.    I think they do rightly.    While the words, " provided, nevertheless " and " upon the following condition," are appropriate words to create a condition, they do not of necessity create such an estate. . They, and similar words, will give way when the intention of the

23

grantor, as manifested by the whole deed, is otherwise, and they have frequently been explained and applied as expressing simply a covenant or a limitation in trust. *Episcopal City Mission* v. *Appleton, 117 Mass. 326 ; Sohier* v. *Trinity Church, 109 Mass. 1, 19 ; Stanley* v. *Colt, 5 Wall. 119 ; 2 Pars. on Contracts 511 ; 4 Kent's Com. 132.*

An estate upon condition subsequent is one which may be defeated by the happening, or not happening, of some contingent event. *2 Blackstone's Com. 152 ; 4 Kent's Com. 120.*

The contingent event, in the clause under consideration, is the complainant's survival of his brother Patrick, but its happening will not defeat the estate which was granted, but will create a right in the complainant to purchase back, within a certain time, his interest in his father's farm at a price to be fixed by arbitration. To give value to the right, both the complainant and the "legal representatives" of Patrick must act. If those representatives refuse to act, is the estate that the complainant conveyed defeated ? Can he then re-enter ? The clause in question gives no right to do so. Making provision for the payment of a price for repurchase, negatives the idea of a forfeiture and re-entry. Obviously, notwithstanding the use of terms apt to create a condition, the clause was intended as an agreement or covenant. It seems to me to be plain that proper construction demands this conclusion. And it is a covenant, though the deed was signed and sealed by the grantor only, for it is settled, in this state, that in an indenture of bargain and sale, purporting to be *inter partes*, by which an estate is conveyed to the grantee, if the grantee accept the deed and the estate therein conveyed, though the indenture be not sealed and delivered by him, it is his deed as well as the deed of the grantor. *Finley* v. *Simpson, 2 Zab. 310, 331 ; Patten* v. *Heustis, 2 Dutch. 293 ; Earle* v. *New Brunswick, 9 Vr. 47, 49 ; Harrison* v. *Vreeland, 9 Vr. 366 ; Golden* v. *Knapp, 12 Vr. 215 ; Sparkman* v. *Gove, 15 Vr. 252 ; Huyler* v. *Atwood, 11 C. E. Gr. 504; Crowell* v. *Hospital of St. Barnabas, 12 C. E. Gr. 650 ; Cooper* v. *Louanstein, 10 Stew. Eq. 284.*

We are thus brought to the question whether a court of equity will enforce the specific performance of this covenant.

It is objected that it will not do so, because it is an unilateral contract, and, also, is incomplete.

The lack of mutuality, it is claimed, exists in the fact that the covenant gives the complainant the right to repurchase, but does not provide that he must do so. It is laid down, as a general rule, that equity will not specifically enforce the performance of a contract where, from its terms, a right does not arise in favor of each party against the other, and where each party is not entitled to the equitable remedy of specific execution of such obligation against the other contracting party. *Pomeroy on Spec. Perf.* § *162.* But this rule is subject to the modification that, if the quality originally lacking should be subsequently supplied, the enforcement of the contract may be made possible. The language of Chief-Justice Beasley, in *Richards* v. *Green, 8 C. E. Gr. 536, 537,* will suffice to indicate how the contract under consideration is made mutual and enforcible.

The chief-justice says : " It is true that there are exceptions to the rule that a court of equity will not perform unilateral contracts, as, for instance, in those cases where an agreement, which the statute of frauds requires to be in writing, has been signed by one of the parties only ; or when the contract, by its terms, gives to one party a right to the performance which it does not confer upon the other, an example of which is exhibited in the instance of a lease for years which gives an option to the lessee of purchasing during the term. But it will be observed that when such contracts come to be enforced in equity, they cease to be unilateral, for, upon the filing of the bill, the party, who was before unbound, puts himself under the obligation of the contract. By his own act he makes the contract mutual, and the other party is enabled to enforce it. The consequence is, that in every case that I can find, where specific performance has been ordered, a mutual remedy existed upon it at the time of rendering the decree. It seems to me that the rule is universal to this extent, that equity will not direct a performance of the terms of an agreement by the one party, when, at the time of such order, the other party is at liberty to reject the obligations of such agreement."

This doctrine is reiterated, in our court of errors and appeals, in *Carskaddon* v. *Kennedy, 13 Stew. Eq. 259, 277.*

Under this doctrine the mutality of the contract before me is sustained.

The second objection is, that the contract is incomplete, because no price is fixed for which the property shall be reconveyed. The contract provides that the complainant may purchase back his interest in the farm, at a valuation to be made by two disinterested persons, one to be selected by him and the other to be selected by the representatives of Patrick. The defendant,. Louisa C. Woodruff, claims to be the sole representative of Patrick, and refuses to name a valuer upon her part, and it is insisted, in her behalf, that this court will not compel her to appoint such a person to act if he be appointed, in other words, will not complete the incomplete contract by compelling an. agreement as to the price for which the reconveyance is to be made.

It is settled that the court will not decree the specific performance of a contract which involves the payment of a price, until the price shall be ascertained. The ascertainment of the price must precede a decree. *Pomeroy on Spec. Perf.* § *149; McKibbon* v. *Brown, 1 McCart. 13; S. C., 2 McCart. 498.* Where the contract specifies a mode of ascertaining the price which is essential, the contract is conditional till the ascertainment, and is absolute only when the price has been determined. If there be default in this respect the contract remains imperfect, and incapable of being enforced. *Fry on Spec. Perf. 163; McKibbin* v. *Brown, supra.*

The limit to which this court has gone in fixing the price to be paid is to ascertain it by reference to a Master, when the agreement simply provides that it shall be fair, without pointing out the mode of determining it. *Van Doren* v. *Robinson, 1 C. E. Gr. 256.* In *Domestic Telegraph Co.* v. *Metropolitan Telephone Co., 12 Stew. Eq. 160; S. C., 13 Stew. Eq. 287,* the agreement provided that the terms of sale were to be fixed "by the party of the first part," and the court refused to compel that party to. fix them.

In *Fry on Specific Performance 163*, it is said :

"If the contract be between A and B to sell and buy at such a price as valuers, to be named by them, shall fix, it seems that either A or B may refuse to name a valuer, and the contract will remain incapable of completion, with-out any liability on the part of the refusing party."

In *Copper* v. *Wells, Sax. 10, 14*, where the bill was filed for the specific performance of an agreement, that, at the expiration of a building lease, the buildings and machinery should be valued by three indifferent persons, one to be chosen by each party, and the third to be mutually chosen by them, or in case of their disagreement, then by the two who should have been chosen by the parties to the contract, and one of the parties refused to name an appraiser, Chancellor Vroom said : "The principle is well settled that the court has no power to compel a party to appoint an arbitrator, and, of course, that a specific performance cannot be decreed. In *Mitchell* v. *Harris, 2 Ves. 129*, Lord Eldon inquired whether there was any instance of a bill to compel parties to name arbitrators, and in *Street* v. *Rigby, 6 Ves. 818*, the same Chancellor remarks : 'There is considerable weight, as evidence of what the law is, in the circumstance that no instance is to be found of a decree for specific performance to name arbitrators, or that any discussion upon it has taken place, in experience, for the last twenty-five years.' The same principle is recognized in *Nichols* v. *Chalie, 14 Ves. 264 ; Waters* v. *Taylor, 15 Ves. 10 ; Wilks* v. *Davis, 3 Meriv. 507 ;* and has been recently confirmed by this court in the late case of *Newbold* v. *Pearson.*"

In *McKibbon* v. *Brown*, above cited, Chancellor Green states, that, where a valuation is, by the terms of the agreement, to be made by arbitrators named by the parties, or by an umpire to be selected by them, and the arbitrators will not act, or cannot agree either as to the valuation or the umpire, the court will not interfere to appoint an umpire or make a valuation.

If Louisa C. Woodruff is the representative contemplated by the covenant in question, I think her position will defeat the complainant's effort to obtain the specific performance he desires. But is she that representative? It is obvious that the personal

representatives of the grantee in the deed are not intended. It is not within their province to deal with real estate. The use of the general term "representatives," in treating of the disposition of lands, would rather indicate that the design was to reach those who might succeed to the title, and, in case of a trust, also to the beneficial use of the lands. Then, both trustee and *cestui que trust* are the representatives who should appoint a valuer. Under the provisions of the trust with which the farm, "Oaklands," was charged in Patrick Woodruff's will, which subject the disposition of the farm to the approval of his daughter, who is the *cestui que trust* for life, it seems to be eminently proper that she should be considered a representative, in the sense intended.

As Mr. Stratton, to whom the lands were devised in trust, died before the testator, the title to the farm descended to Louisa C. Woodruff as heir-at-law of her father, Patrick, but charged with the trust established by the will. *Lewin on Trusts (8th ed.) 833; Perry on Trusts § 38.* From the character of that trust, it seems to me that a trustee should now be appointed in the place of Mr. Stratton. I will order a reference to a Master, to ascertain who will be a fit and proper person to receive the appointment, and what security the person selected should be required to give. I will appoint a new trustee, but will deny the other relief prayed, and as to it, I will dismiss the bill.

I have reached this conclusion by following the established rules which have governed the court in cases of this kind, and I fail to perceive why the sentiment, which, it is claimed, actuates the complainant in his effort to obtain a specific performance of the covenant, should induce me to depart from those rules. Under the most favorable decision he could obtain, but an undivided fourth of the land would go to him, and it is admitted that such a recovery would probably lead to a partition or sale of the farm. If sentiment is to weigh, it would seem to be well that the farm shall remain, undivided, in the possession of Louisa C. Woodruff, whose remembrances and associations connected with it extend not only to her father, but to her grandfather also.