The bill of complaint in this case was filed for the purpose of compelling specific performance of an option to purchase real estate contained in a lease.
On May 15th, 1942, complainant and defendant entered into a written lease under seal for premises at 122 Adams Street, Hoboken. The lease was for two years beginning July 1st, 1942, and contained the following provision: *Page 258 
"The tenant agrees that in the event the owner and landlord of said premises has a buyer for the premises, the tenant will permit the prospective buyer or buyers to go through and inspect the premises. It is understood and agreed, however, that the tenant herein shall have the first option to purchase said premises."
There was no clause in the lease providing for a renewal.
Complainant is the tenant. He did not vacate the premises at the expiration of the term and continued paying rent. He thereby became a holdover tenant under R.S. 46:8-10.
Shortly before November 15th, 1945, defendant agreed to sell the premises to one, Pasquale, for $4,000. Complainant, on November 15th, 1945, upon learning of the agreement to sell called on defendant's agent who collected the rents and offered to purchase the premises for the same price, leaving with said agent $200 as a deposit on account of said purchase.
Complainant contends that by virtue of the written lease he is entitled to the first option to purchase said premises by reason of the fact that he is holding over under the terms of said agreement. Defendant says that the option to purchase expired at the termination of the term of the written lease.
The first question to be decided is whether or not this court would have decreed specific performance of the option if the same had been exercised by the complainant during the term of the lease. If the answer is in the negative, it makes no difference whether the option to purchase continued after the term of the written lease expired.
Will equity decree the specific performance of such an agreement? I think this question must be answered in the negative. See McClung Drug Co. v. City Realty and InvestmentCo., 91 N.J. Eq. 216; affirmed, 92 N.J. Eq. 237. That case is very similar to the present case. Vice-Chancellor Backes in that case said:
"It is familiar law that equity will not specifically enforce a contract for the sale of lands unless it is conclusive and certain as to parties, the subject-matter, the price and the terms. Some of the cases in this state are: McKibben v. Brown,14 N.J. Eq. 13; Welsh v. Bayaud, 21 N.J. Eq. 186; DomesticTelegraph Co. v. Metropolitan Telephone Co., 39 N.J. Eq. 160;Woodruff v. Woodruff, 44 N.J. Eq. 349; *Page 259 Schenck v. Spring Lake Beach Improvement Co., 47 N.J. Eq. 44.
It is not necessary that the price be specified in figures or words at length. It is sufficient if a standard is established by which the price may be determined with certainty; as, for instance, the "fair value" or "market value" (VanDoren v.Robinson, 16 N.J. Eq. 256), or at a price offered by another upon a certain event, and accepted (Race v. Groves, 43 N.J. Eq. 284; Hayes v. O'Brien, 149 Ill. 403, or the appraisal of arbitrators. Woodruff v. Woodruff, supra. Complainant's counsel rely for authority altogether upon the remark of Vice-Chancellor Bird in Race v. Groves, and the opinion of the Supreme Court of Illinois in Hayes v. O'Brien. I think the options in those cases are easily distinguishable in principle, in that each of them defined the price to be the amount of a future accepted offer from another. No provision of that kind is contained in the complainant's option. All the drug company got by it was the exclusive privilege, for thirty days, of buying if the realty company decided to sell. It is not implied that the realty company was to fix a price at which it would sell to the drug company, for it is common practice to put property on the market awaiting proposals. Nor can it be read into the option that upon the realty company's determination to sell, and a price being fixed, it was to be unalterable and final; nor that the price was to be the accepted offer of another; nor that it was to be the reasonable value, as the complainant's counsel contend. Any of these factors of definiteness, properly stipulated upon the contingency of an offer of sale, would have supplied the required certainty, according to the authorities. A simple illustration of the incompleteness of the contract is, that the option would be spent by the giving of a notice that the property was for sale, without more, and the lapse of thirty days.
"It is not the privilege of the court to piece out the option into a complete contract by seizing upon the resolution to sell for $32,000, or the selling price to Greenspan and Borak of $34,000, as the sum for which the realty company were, or ought, to sell to the complainant. That would be a juridical interpolation of an essential of the contract upon which the minds of the parties had not met, at least not at the time the *Page 260 
option was granted; and it is of that period that it must speak."
I have, therefore, concluded that the option to purchase the premises could not have been specifically enforced by this court during the term of the lease and, therefore, cannot be enforced by the complainant as a mere holdover tenant.
There was no proof before me at the hearing of the existence of an agency between defendant and Rinaldi for the sale of said premises. The acceptance and retention of the $200 made to Rinaldi by the complainant cannot bind the defendant in any way.
I will advise a decree in accordance with these views.