## Borden Appeal.

Argued January 11, 1952. Before DREW, C. J., STERN, STEARNE, BELL, CHIDSEY and MUSMANNO, JJ.

*Morris Gerber,* with him *Cassin W. Craig* and *Wisler, Pearlstine, Talone & Gerber,* for appellants.

*Fred Wolf, Jr.,* with him *Maxwell Strawbridge* and *Wolf, Block, Schorr & Solis-Cohen,* for intervenors, appellees.

OPINION BY MR. JUSTICE MUSMANNO, March 24, 1952:

Nathan L. Traub and Katharine M. Buchsbaum, here referred to as intervenors, are the owners of a tract of ground containing 13 acres in Cheltenham Township in Montgomery County. Desiring to build two apartment houses on this ground, they applied to the township authorities for the necessary permission. As the land was in a "B" residence district, it was necessary for them to appear before the Zoning Board of

Adjustment of Cheltenham Township to establish that the contemplated building project could be authorized (under the zoning ordinance in effect) as a "special exception."

Owners of property in the immediate vicinity of the tract involved objected to the erection of the proposed apartment houses, claiming that these structures would be detrimental to the value and quiet enjoyment of their properties. A hearing was held before the Board of Adjustment which decided in favor of the intervenors, an appeal was taken by the aggrieved property owners to the Court of Common Pleas of Montgomery County, and a new hearing was granted. The President Judge of Montgomery County came to the same conclusion as had the Board of Adjustment, his decision was affirmed by the court en banc, and now the property owners, here called the appellants, have appealed to this court.

The contest between the appellants and the intervenors is a reflection of the times. Small home owners throughout the country are resenting the invasion of apartment buildings into the sanctity of their theretofore private preserves. The apartment building has become a brick and steel monster in their midst, casting its shadow of assumed superiority and conceit over their modest dwellings, and imposing on them the subserviency of all the annoyances which go with the heavy automobile traffic, crowds and noises which frequently accompany apartment house proximity.

Our power of review in this case, however, is limited to determining whether the Board of Adjustment abused its discretion in authorizing the intervenors to proceed with the erection of the apartment houses asked for. Was the action of the Board arbitrary, capricious and unreasonable, or clearly in violation of positive law? If it was not, our duty is to affirm its

action. *Jennings' Appeal,* 330 Pa. 154, 198 A. 2d 621; *Berman v. Exley,* 355 Pa. 415, 50 A. 2d 199; *Darling v. Zoning Board of Adjustment of Philadelphia,* 357 Pa. 428, 54 A. 2d 829; *Triolo v. Exley,* 358 Pa. 555, 47 A. 2d 878; *Reininger Zoning Case,* 362 Pa. 116, 66 A. 2d 225.

The Board decided that the multiple dwellings involved in the application by the intervenors would not have any adverse effect upon the health, safety and morals of the community. A study of the record would not indicate that the Board was arbitrary or unreasonable in this conclusion.

Law, in order to produce justice, must apply to objective realities of today and not to abstract visions of the past. The apartment house of today bears little in common with the private home of yesterday, which every home owner regarded as his castle. With the progress made in scientific living quarters the modern apartment is more apt to provide what was regarded as the fabulous comfort of a castle than the ancient, slate-roofed, rain-spouted frame houses so cherished in sentiment and often lacking in physical conveniences.

The constant augmenting of our population, the insatiable demands being made for the housing of motor vehicles multiplying with rabbit-like fertility in every community, and the increasing migration of people from countryside to urban or near-urban sites are making multiple dwellings more and more a necessity rather than a luxury.

The appellants complain that as recently as 1948 the property involved was changed from residence district "AA" to "A", and that by two successive reductions within the period of two years it was zoned "B". The appellants maintain that they had the right to expect that this change would not have occurred unless in the interest of public welfare. But it *was* on the basis of public welfare that the change was made.

Appellants assume that the intervenors had the burden of proof of establishing that the granting of a special exception would better promote the health, safety, morals and general welfare of the immediate vicinity. But the intervenors were not required to lift and carry such a burden. The very ordinance under which the Board acted provided that: "a building may be erected, altered or used, and a lot or premises *may be used, for any of the following purposes and for no others* . . . (b) *Multiple dwellings when authorized as a special exception."* Thus the cases cited by the appellants dealing with variances are not pertinent here. The only limitation placed upon the Board of Adjustment in passing upon special exceptions (Section 1201 of the Cheltenham Zoning Ordinance), is that the Board shall "hear and decide special exceptions to the terms of this ordinance in such cases as is herein expressly provided for, in harmony with the general purpose and intent of this ordinance with power to impose appropriate conditions and safeguards."

The appellants further contend that the intervenors had the burden of showing a compelling need or great desirability for the special exception, and that since this tract could be developed for single dwellings without any financial hardship and practical difficulty, the intervenors did not meet that burden. With this contention we cannot agree. It is when seeking a "variance" that the applicant therefor must show that unnecessary hardship will result unless the variance is permitted: *Berman v. Exley,* 355 Pa. 415, 50 A. 2d 199; *Triolo v. Exley,* 358 Pa. 555, 47 A. 2d 878; *Reininger Zoning Case,* 362 Pa. 116, 66 A. 2d 225; *Kerr's Appeal,* 294 Pa. 246, 144 A. 2d 81.

Appellants complain about the open-air parking lots and the dining room in the apartment buildings authorized to the intervenors, arguing that the Board

of Adjustment would not have had the right to grant a special exception for a parking lot or a restaurant if the application were made for either of these commercial uses alone. But the hypothesis is irrelevant. Conceding that the intervenors could not, under the ordinance, conduct a general public parking enterprise, or an open-to-the-public restaurant, it does not follow that they should be denied the operation of such facilities for the exclusive use of the apartment house tenants.

Once it is decided that the apartment building comes within the special exception provided in the ordinance, and once it is established that the Board did not abuse its discretion in reaching this conclusion, and we do so find, anything which logically accompanies the normal operation of an apartment building must also be authorized. And we cannot conceive of facilities more indispensable to an apartment dweller than quarters for his automobile which he needs in travelling to and from the apartment, and a dining room in which to eat.

The record discloses that the contemplated apartment buildings will be six stories in height, built of steel, reinforced concrete and brick, and of modern fireproof construction. They will occupy only one acre of the 13 acre tract, and the remaining area of 12 acres will be landscaped and maintained in park-like attractiveness for 30 years. During that period the 12 acres must remain unbuilt upon. The buildings will create no undue traffic or fire hazard. The testimony further shows that provisions can be made for an increased water supply in the event of threatened water shortage, also that township sewer inspectors made a survey and reported that proper sewer facilities will be available to take care of the proposed project, that garbage and rubbish will be disposed of through a built-in fire-proof incinerator located in the basement of the building,

and that the lot area is sufficiently large to provide ample light and air not only for the occupants but for adjoining residents.

Whether all these facilities compensate the apartment dwellers for the loss of privacy which goes with private homes is of no consequence in this case since here the appellants do not base their claims upon any restrictive covenants in the deeds (as in the case of *Bennett v. Lane Homes, Inc.,* 369 Pa. 509, 87 A. 2d 273,) but entirely on the zoning ordinance involved.

We can find nothing in the record to justify the conclusion that the action taken by the Board of Adjustment of Cheltenham Township, in granting this special exception was arbitrary or in violation of the law, and hence this court has no power to interfere with the exercise of the administrative duty entrusted to said Board of hearing and deciding special exceptions to the terms of the zoning ordinance.

Decree affirmed. Costs to be paid by appellants.