## Esso Standard Oil Co. v. Cheltenham Township Zoning Board of Adjustment

*Federico F. Mauck*, for appellant.

*Samuel H. High, Jr.*, for zoning board of adjustment.

GERBER, J., December 9, 1957.—Appellant, Esso Standard Oil Co., filed a petition with the Cheltenham Township Zoning Board of Adjustment, requesting permisson to demolish an existing gasoline service station, automobile service and repair facility at the Southeast corner of Central Avenue and Ashbourne Road and to replace same with a new, modern gasoline service station. The existing facilities are a nonconforming use in a "AA" residential district.

The board of adjustment considered the petition as an application for a special exception under section 1511(2) of the Zoning Ordinance of Cheltenham Township wherein it is provided that no structural change shall be made in any building used for a nonconforming use without its having been authorized as a special exception. The board considered that the

application was governed further by section 1511(5) as a change of use.

In accordance with the requirements of the ordinance notices of a hearing were sent to property owners in the area. The hearing was held before two of the three members of the board. The zoning board of adjustment refused the request, with one of the members who attended the meeting dissenting, whereupon the Esso Co. appealed to this court, contending that the board's refusal to grant the special exception was unlawful, arbitrary, capricious and a manifest abuse of discretion. No additional testimony was taken before the court. The cause was argued before the court en banc on the record as it came up from the board of adjustment.

The testimony taken before the board of adjustment was very brief, being solely that of the representative of petitioner. He stated that the service station presently on the site was antiquated and it was the wish of petitioner to completely remove same and construct on the site a new modern service station; that the new station would conform with all municipal and State requirements. Plans were presented showing the present building and use of the site and showing the proposed building and proposed use of the site. It was apparent from the plans that no part of the old building would remain, the new building would be no higher than the old building, would cover less area and the over-all use both within and outside of the building would not involve any greater area of land.

At the time of the hearing the secretary of the board of adjustment asked if anyone was present who was interested in being heard and no one appeared. Thus it can be said that no one appeared to protest the request of applicant, nor did anyone file a written objection.

The material portions of section 1511 of the Zoning Ordinance dealing with nonconforming uses, read as follows:

"1. Land: Any land, the existing lawful use of which at the time of passage of this Ordinance does not conform with the regulations of the district in which it is located, shall have such use considered a non-conforming use, which may continue on such land but shall be subject to the regulations covering non-conforming uses.

"2. Buildings: Any lawful building, or the lawful use of any building existing at the time of the passage of this Ordinance that does not conform to use, height, location, size or bulk with the regulations of the district in which it is located, shall be considered a nonconforming building or use, and may continue such use in its present location, but shall be subject to the regulations covering non-conforming uses. No structural alteration or change, other than such as has been ordered by an authorized public officer to assure the safety of the building, shall be made in any building used for a non-conforming use, without its having been authorized as a special exception.

"3. Change of use: A non-conforming building or use shall be considered as such unless and until it complies with the regulations of the district in which it is located. Such use shall not be changed to a use designated for a district having less restrictive regulations. . . .

"5. Change or resumption of non-conforming use: The Board of Adjustment shall have discretion to determine what resumption or change of non-conforming use is of the same class of use and permissible. . . ."

The material findings of the board of adjustment are as follows:

"6. In addition to the present facilities of a gasoline service station, the operation in question also offers automobile repair services.

"7. In the construction of its new building, the applicant proposes to do away with the automobile repair facilities and only offer the services of a gasoline service station.

"8. The present auto repair facilities provide a much needed service in the community and constitute the primary use to which the property is put.

"9. Elimination of this service in the new building and conversion to only a gasoline service station will thus be detrimental to the welfare of the neighborhood.

"10. With the emphasis placed on the sale of gasoline and service, the public safety will also be affected by the increased flow of traffic into and out of the property in question, which property is located at the intersection of two narrow, highly traveled roads.

"11. It is the conclusion of the majority that applicant's proposed change or resumption of use represents a change in the existing non-conforming use which is not permissible and which would be detrimental to the health, safety and welfare of the residents of Cheltenham Township particularly those residing in this area."

There is serious doubt as to whether the complete demolition of the building and erection of a totally new building constitutes a structural alteration or change in the building as contemplated by section 1511(2) of the ordinance. See Peirce Appeal, 384 Pa. 100 (1956).

Assuming that section 1511(2) applies, the case is controlled by the legal principles governing a special exception and appellant's right to continue, expand and modernize its nonconforming use provided such use is not changed to a use designated for a district having less restrictive regulations.

On the subject of a change of use the board concludes that with the present facilities, the repairing of automobiles is the primary use even though there

are gasoline pumps which are operated as a gasoline service station. The board apparently finds that the new plans proposed to do away with the automobile repair facilities and only offer the services of a gasoline service station. Thus the board determines that applicant proposes a change of a nonconforming use which the board may refuse. This is not so. Section 1511(5) only empowers the board to determine what change of nonconforming use is of the same class of use and permissible. Section 1511(3) provides that a nonconforming use shall not be changed to a use designated for a district having less restrictive regulations. Thus the board, in determining under section 1511(5) whether a nonconforming use is being changed to a different class of use, must be guided by section 1511(3).

Under sections 803(11) and 901(11) of the Ordinance the use of property for "public garage, service and repair shops" is designated for exactly the same districts and dealt with in exactly the same terms as is used for "gasoline and battery service stations".

Under these provisions the board has no discretion to rule against applicant. There is no change to a use for a district having less restrictive regulations. See Molnar v. George B. Henne & Co., Inc., 377 Pa. 571 (1954).

The courts of this Commonwealth have always protected the rights of the owner of property whose use thereof did not conform with the zoning regulations applicable thereto at the time of their establishment, not only to continue such use but also to expand the same and in this connection to take advantage of modern and effective instrumentalities to carry out the same: Cheswick Borough v. Bechman, 352 Pa. 79 (1945); Firth v. Scherzberg, 366 Pa. 443 (1951); Davis Appeal, 367 Pa. 340 (1951); Transicoil Corp.

v. Worcester Township Board of Adjustment, 72 Montg. 155 (1955).

In Humphries v. Stuart Realty Corp., 364 Pa. 616 (1950), the Supreme Court stated, at page 621:

". . . a non-conforming use cannot be limited by a zoning ordinance to the precise magnitude thereof which existed at the date of the ordinance; it may be increased in extent by natural expansion and growth of trade. . . ."

Since a nonconforming use may be increased and extended, it follows that it may be modernized and reconstructed, even if in so doing the precise magnitude of the facilities for each phase of the nonconforming use is changed.

Even if there is a complete abandonment of all repair service and the property is used exclusively as a gasoline service station, applicant is within his rights. The abandonment of one phase of a nonconforming use does not preclude the continuance of another existing phase of a nonconforming use. If the abandonment of one such use results in an increase in other use, there can be no valid legal objection because a nonconforming use cannot be prevented from expanding within the natural growth of business.

If the board of adjustment has any discretion at all in acting upon this application, its decision must be governed by the standards applicable to a special exception.

The considerations upon which the board based its decision were in essence:

1. That the automobile repair facilities now provided on the property are much needed in the community and that the proposed change in the property would accordingly be detrimental to the welfare of the neighborhood in depriving it of such services.

2. That the new station would emphasize the sale of gasoline and service rather than repairs, and that

this would increase the flow of traffic into and out of the property, thus increasing traffic hazards in the streets abutting the property.

The elimination of the repair facilities is not a proper basis for denying a special exception. This is a clear attempt by an administrative body to regulate property use, where such regulation amounts to "an arbitrary, unnecessary or unreasonable intermeddling with the private ownership of property, even though such acts be labelled for the preservation of health, safety and general welfare". Such action is of course beyond the power of a board of adjustment: Lord Appeal, 368 Pa. 121 (1951), quoting from White's Appeal, 287 Pa. 259 (1926).

A possible increase in traffic is not a proper basis for the board's action.

"It is not *any* anticipated increase in traffic which will justify the refusal of a 'special exception' in a zoning case. The anticipated increase in traffic must be of such character that is bears a *substantial* relation to the health and safety of the community. A prevision of the effect of such an increase in traffic must indicate that not only is there a likelihood but a high degree of probability that it will affect the safety and health of the community, and such prevision must be based on evidence sufficient for the purpose. Until such strong degree of probability is evidenced by legally sufficient testimony no court should act in such a way as to deprive a landowner of the otherwise legitimate use of his land": Archbishop O'Hara's Appeal, 389 Pa. 35, 54 (1957).

An examination of the instant record fails to reveal any evidence whatsoever to support the assumption of the board that there will be an increase in traffic. The conclusion of the board in this respect is based purely upon its own speculation and therefore is not sufficient to justify a finding that an increased flow of traffic

will be occasioned or that if occasioned that it will be detrimental to the health, safety and welfare of the community.

No board is empowered to substitute its judgment for that of the owner of property and, in effect, direct which of several phases of his business shall be emphasized. The grant or refusal of this particular special exception does not lie within the unfettered discretion of the board.

"Such discretion can only be constitutionally exercised within the standards provided in the ordinance. Unless the proposed use affects adversely the health, safety and morals of the community—the standards controlling the Board's and the court's discretion—it must be allowed.. To refuse a proposed use for a reason which has no substantial relationship to the standards provided by the ordinance is beyond the powers both of the board and the court and such exercise of power can be corrected both on broad and narrow certiorari": Archbishop O'Hara's Appeal, supra, p. 57.

It is not the burden of the applicant to establish that the granting of the special exception will not adversely affect the health, safety, morals and general welfare of the community. Nor, must applicant show a compelling need or great desirability for the special exception. See Borden Appeal, 369 Pa. 517 (1952).

In line with our duty to fully and carefully examine the reasons given by the board of adjustment for the denial of this application, and giving proper weight to the findings of the board, we have carefully examined this record and are satisfied that the reasons assigned by the board for a denial of this application are not such as to justify the deprivation of appellant's right to the proposed use of his property. In refusing this application the board of adjustment abused its discretion and erroneously applied the law applicable in such a situation.

And now, December 9, 1957, the decision of the Board of Adjustment of Cheltenham Township is reversed and it is ordered and directed that the board grant the special exception as prayed for and as described in the application and plan filed.