## Lawrie v. Concord Township Zoning Hearing Board

*Michael J. Cantwell, Jr.,* for appellant.
*John W. Wellman,* for Concord Township.

172

KELLY, *J.*, January 7, 1981—This is an appeal from a decision of the Zoning Hearing Board of Concord Township.

Appellant, Thomas F. Lawrie, Sr., is the owner of 5.4 acres of ground, located on Route 202 in the township of Concord, with a frontage of 512.46 feet on said highway, and a depth of 400 feet. Route 202 is a four lane divided highway at that point, with two lanes running south and two running north. Both lanes are separated by several hundred feet similar to the Atlantic City Expressway. Route 202 is a main arterial state highway running between King of Prussia on the north, and the State of Delaware to the south. Appellant operates two new car franchises, Volkswagen and Subaru, on said plot, located on the west side along the southbound lanes. On this plot appellant, in 1970, erected a building consisting of a showroom, parts department and repair shop, containing over 15,229 square feet of lot area and containing 19,878 square feet of gross floor area. Approximately 185,000 square feet is paved for the parking and storage of automobiles.

When the plot was purchased in 1970, it was zoned B-Business under the then existing zoning ordinance of Concord Township, which allowed the use of the ground for motor vehicle sales, services, or repair shop when authorized as a special exception. Appellant obtained a special exception to operate a motor vehicle sales and service facility subject to 13 conditions which the appellant had to agree in writing to comply with, said decision of the zoning hearing board being dated October 19, 1970. Condition 13 stated that "No body work will be done on the premises."

In 1971 the township of Concord changed the

zoning classification of the plot in question to C-2 which allowed commercial use, but not a motor vehicle sales and service facility. The latter use was placed in a C-3 classification. As a result of the reclassification, appellant's use became nonconforming.

In October, 1979 appellant filed plans for a permit to build an addition to his building to accommodate a larger repair shop, parts department, and sales and office area. Part of the repair shop was to be used for *body repair*. The permit was refused by the township manager because of Condition (13) of the Special Exception. The addition itself complied with all of the zoning requirements of C-2 as to length, set back, side yard, rear yard, and ground area covered by the total building.

Appellant filed an appeal to the board seeking the removal of Condition (13) attached to a special exception that appellant sought so that he could erect and use the addition as submitted.

Hearings were held before the zoning hearing board of Concord Township, Delaware County, Pa. on November 8, 1979 and November 29, 1979.

By order dated December 17, 1979 the board denied the petition for special exception, thus this appeal.

In its conclusions of law accompanying the order, the board held that:

1. Petitioner's use of the property is a nonconforming use.

2. Petitioner's proposed additional use is not an accessory use, but a separate use not permitted in the C-2 zone.

3. The zoning hearing board can review its prior orders and alter them if it is proven that a condition was unreasonable at the time is was imposed.

4. The applicant has failed to meet its burden of proving that Condition (13) was unreasonable or illegal when imposed.

5. The addition of an auto body shop would create a second, separate nonconforming use to the premises. This is not permitted by the zoning ordinance.

The first question to be decided is did the zoning hearing board commit error in holding that the use of part of appellant's new addition for automobile body repair was not an *accessory use*, but a separate use not allowed by the ordinance.

It is undisputed that appellant's use of the property is a nonconforming use and that appellant does not need board approval to expand that use. The board, however, concluded that appellant's use of part of the premises as a body shop would not be an accessory use, but an additional use not permitted in the C-2 zone.

Section 611(4) of the Concord Township Zoning Ordinance states:

"Accessory use on the same lot with and customarily incidental to any of the above permitted uses, which use may include (1) storage within a completely enclosed building in conjunction with a permitted use: (b) living quarters for watchmen or caretakers of a permitted institution; and (c) signs as permitted in Section 2000."

The law is clear that a valid nonconforming use may be extended by an accessory use, even though such accessory use was not in existence when the property became nonconforming.

In the case of Gross v. Zoning Board of Adjustment, 424 Pa. 603, 607 (1967), the Supreme Court stated:

"We have consistently held that a lawful nonconforming use . . . may validly be expanded by a reasonable accessory use which is not detrimental to public health, welfare, and safety. . .

"Pennsylvania's ruling . . . is premised upon the view that the owner of property to which a lawful, nonconforming use has attached, enjoys a vested property right thereto which may not be abrogated unless it is a nuisance, or abandoned, or is extinguished by eminent domain . . . and that a zoning ordinance cannot preclude a natural and reasonable expansion thereof."

In applying this obvious principle, the Supreme Court in the above case held that a nonconforming bowling alley could operate a restaurant which it held to be a reasonable accessory use, since most bowling alleys in the area had restaurants. In the case of Novello v. Zoning Board, 384 Pa. 294, 121 A. 2d 91 (1956), and Parisi v. Phila. Zoning Board, 393 Pa. 458, 143 A. 2d 360 (1958), a car wash was held to be a reasonable accessory use to a garage repair shop. In Mayfair Sales Co. v. Abington Township, 77 Montg. 15 (1960), the court held that a retail store in a district zoned C-1 could use an area for storage which was only allowed in C-3 because storage was an accessory use to a retail store.

The question is simply whether using part of a new car sales agency and service facility for body work is an accessory use.

Appellant testified that his average customer is surprised to learn that his new car dealership does not have a body shop on the premises, indicating that this is a normal service of a new car dealer. Evidence was introduced that out of 47 new car agencies in Delaware County, 34 or nearly 73 percent, had a body shop on the premises. Y.B.H. in

Edgemont and Future Cars, Inc. in Ridley Township and Warrington Motors in Bryn Mawr, new car Volkswagen dealers, all have body shops. Concord Volkswagen is the only Volkswagen dealer which does not. Testimony was also introduced that six out of seven Chevrolet dealers, four Oldsmobile dealers and five out of six Chrysler dealerships have body shops.

Under the old B-Business zoning classification, which was in existence when the special exception was obtained, a body shop obviously fell within the definition of ". . . motor vehicle, sales, service or repair shop . . ." in section 600(6) since the hearing board felt it necessary to specifically ban (illegally, as is hereafter set forth) the use on appellant's premises. William Steimer, an architect employed by applicant, testified that a body shop is an integral part of an automobile sales and service agency.

The board itself concedes that a "substantial" number of automobile sales and service establishments have auto body shop repair facilities. Clearly, a body shop is an accessory use customarily incidental to a new car agency.

On page 4 of its discussion, the board states:

"While an automobile body shop may, in certain instances, be considered an accessory use to automobile sales agencies, under the Concord Township Zoning Ordinance, this is clearly not the case. Automobile sales agencies are permitted in the C-3 district of Concord Township. That district specifically prohibits automobile body shops. As a result, an automobile body shop could not be considered an accessory use to an automobile sales agency."

Section C-3 of the Concord Zoning Ordinance does not specifically ban auto body repair shops for an automobile sales agency. C-3 reads as follows:

"Section 620. C-3 Service Commercial Districts make appropriate provision for a wide range of highway-oriented retail automotive and service-type business activities which ordinarily require main-highway locations and cater to transient as well as to local customers. Among the objectives of Service Commercial Districts are (1) to encourage the sound and appropriate commercial development of compact segments of major highway frontage, (2) to provide locations for important highway and service type business use convenient to central and other retail business locations, and (3) to protect major highways as thoroughfares."

In C-3 Service Commercial Districts, the following regulations shall apply:

"Section 621. Use Regulations. A dedicated building may be erected or used and a lot may be used or occupied for any of the following purposes, provided that the use and conversion of any existing dwelling shall comply with the provisions of Section 1000.

1. Motel, Hotel or Inn.

2. Restaurant provided it is operated such that all food is consumed within the building.

3. Automobile service establishments as follows: motor vehicle service station (not to include a repair shop or car wash establishment as a main use); public garage; *automobile sales agency (not to include a used-car lot or truck sales agency as a main use);* or similar use, provided that (a) the lot on which such use is established shall not be less than one acre in size, and (b) all facilities are located and all services are conducted within the confines of the lot. In no case will the sale or rental of mobile homes, campers, travel trailers, pickup campers and other similar usage be permitted.

4. General service or contractor's shop, including carpenter, cabinet making, furniture repair, light metal working, tinsmith, plumbing, or similar shop, provided that the floor area devoted to such use shall in no case exceed 10,000 square feet.

5. Tourist, rooming or boarding house.

6. Wholesale business establishment.

7. Indoor storage building.

8. Laundry, dry cleaning or clothes pressing establishment, where materials to be employed will not involve danger from fire or explosion, and that the use will not detract from the predominant commercial character of the District.

9. Governmental or public service corporation building, grounds or facility, or any similar use.

10. The following additional uses when specifically authorized by the Township Supervisors as being compatible with the intent of the Comprehensive Development Plan of the Township:

a. Outdoor place of amusement, recreation, or assembly, (not including drive-in theater) on a lot not less than two acres in area.

b. Truck sales agency.

c. Motor vehicle repair shop, but excluding motor vehicle body repair shops.

d. Commercial greenhouse or nursery.

e. Any use of the same general character as any of the above permitted uses, but not to include any use that is objectionable as defined in Section 1006 of General Regulations.

11. Accessory use on the same lot with and customarily incidental to any of the above permitted uses, as permitted in Section 601-10 of the C-1 District."

A close reading of the provisions of C-3 indicates that under section 621(3), an "automobile sales

agency" is a permitted use and the only limitation placed on what is normally considered an automobile sales agency is that a used-car lot or truck sales agency cannot be included as a main use. Section 621(11) allows the normal accessory uses of all the enumerated uses of section 621(1) through (11). Since an auto body shop is normally considered an accessory use to an automobile sales agency, expressly found by the board, it is apparent that a body shop is allowed in an automobile sales agency, not as a main use, but an incidental use.

The board argues that 621(10) sets forth additional uses which need the approval of the Township Supervisor. Subparagraph (c) states "Motor vehicle repair shop, but excluding motor vehicle body repair shops." The board therefore concludes that body shops are excluded in all of C-3 and therefore cannot be considered an accessory use.

It is evident that (10)(c) only refers to repair shops which repair vehicles as a main use. There is no indication or hint that the requirements of (10)(c) are to refer to or control the permitted uses in (3). This is borne out by the fact that a motor vehicle service station is allowed in (3) but is not to have a repair shop as a main use. Repair work is allowed then as a permitted accessory use under (3) and is not controlled by the requirements for a motor vehicle repair shop under (10)(c).

An automobile sales agency is allowed under (3) with no limitations as to what is normally an accessory use. If the ordinance meant to limit these normal accessory uses, it would have specifically done so. Since auto body work is a normal accessory use for an automobile sales agency, such use must be permitted by a clear interpretation of the ordinance. Ten (c) obviously has no application to such use and the board erred in holding that an

automobile body shop could not be considered an accessory use to an automobile sales agency.

Evidence was also introduced, which was unrebutted, that the use of part of the new addition for body work would not be detrimental to public health, welfare and safety.

The building addition complies with the present building code and the zoning requirements of a C-2 district as to set back, side yards, rear yards, ground coverage and height. The area is zoned for commercial uses, the minimum sizes of which must have five acres of ground, less than appellant's 5.4 acres. The surrounding area is zoned C-2 to the north, south and east. To the west is a residential district located in an adjoining district, but all of the ground to the west, to wit, 28 acres, is owned by appellant and by natural terrain is separated therefrom. As a matter of fact, the closest residence is no closer than one-half mile away and is not located in Concord Township. Route 202 is one of the major state highways in the area and contains heavy commercial uses along its route, especially near the ground in question. The use is ideally suited for the area as indicated by aerial pictures of the property admitted into evidence. No one would ever be aware that body work was being done on the premises because of the plan of the building and the natural screening provided by the particular topography of the site.

No citizen appeared to oppose the plan. Mr. Lawrence P. Soper, a township supervisor, and Daniel Ward, a member of the township planning commission, appeared. Mr. Soper did not categorically oppose the proposed use and he admitted that no resolution was passed by the board of supervisors opposing the plans. Mr. Ward made several

suggestions as to conditions if the board saw fit to approve the plan as did Mr. Soper. Mr. Magnin, the owner of a restaurant located directly across Route 202 from the property, spoke in favor of the plan. No other persons appeared.

Appellant, Thomas F. Lawrie, Sr., testified that the reason for the addition was the increased volume of business which has resulted in more body repair work and a higher demand for parts. The repair shop was only built to service small foreign cars and additional lifts are needed for the increased volume and the servicing of normal size cars which the agency takes as trade-ins for new cars. He also testified that there is a great demand for body work, and his inability to provide such work has hurt him internally and competitively. Internally, because he has to recondition his trade-ins and repair new cars which are damaged in transit. Competitively, because his customers will go to competition, especially Volkswagen and Subaru dealers that provide body work. He also testified that having to "broker" body repairs to other agencies increases his expenses and results in higher prices to his customers.

William Steimer, appellant's architect, testified that the size of the addition is necessary to accommodate the present need and to efficiently repair vehicles. All of the equipment, including the paint spray booth, must comply with stringent state and Federal regulations as to safety and environmental protection. All of the automotive repair and body repair is to be done completely within the building and cannot be seen from the outside. All automobiles requiring body work will be placed behind a screen, blocking visibility from the public.

It is also clear that the proposed area to be used for

body work will only constitute 16 percent of the total area of the dealership and will definitely be incidental to the main use of an automobile sales agency.

Appellant's plan to use part of the expanded building for body repair work is a valid accessory use not detrimental to the community and should have been allowed by the zoning hearing board.

Does the zoning hearing board have the power to alter, delete, or modify a condition previously imposed upon a special exception?

In the case before the court, the zoning hearing board, while indicating that it has the power to review its prior orders, held that it could only alter a prior order if it were proven that a condition was unreasonable at the time it was imposed. (Conclusion of law No. 3.) It then held that the appellant did not meet that burden. (Conclusion of Law No. 4.) This is a much more restrictive view of what the case law of this Commonwealth and legal authorities feel is the power and the duty of the board. Ryan, Pennsylvania Zoning Law and Practice §9.4.20 sets forth the prevailing view:

"On the other side, a property owner may seek relief from conditions previously imposed. The proper procedure for an applicant who seeks the reduction or elimination of board-imposed conditions has not been analyzed in any appellate decision, but there is no reason to think that the path lies other than through the zoning board, for the power of the board to impose conditions in the first instance carries with it the power to reduce those conditions where necessary to correct errors or to accord with new law or new facts. There is no reason to require that a request for an amendment be processed through an application to the zoning

officer—who obviously has no power to modify conditions imposed by the zoning board—and a subsequent 'appeal' to the zoning board: see §9.4.6. Instead the proper course would seem to be a direct application to the zoning board for modification of the condition: In re Appeal of Consolidated Cleaning Shops, Inc. 103 Pa. Super. 66, 157 Atl. 811 (1931); Appeal of Every Clean, Inc., 41 D. & C. 2d 536 (Del. 1966); In Re Winkelman, 61 Berks Co. L.J. 118 (1969).

"There also is little in the way of judicial authority establishing the standard applied by the zoning board in deciding whether or not to amend a prior condition. On the one hand, it can be argued that a condition which has become final by expiration of the appeal period, or by affirmance, should be treated in the same way as a provision of the zoning ordinance, and a showing of 'unnecessary hardship' [see Chapter 6] required to vary the condition. The difficulty with this argument is that a condition is not a provision of the zoning ordinance: it is a condition designed by the zoning board to protect the public interest in the particular case, and nothing more. Accordingly, the better approach would be to require only that the applicant establish that the condition no longer promotes the public interest: Akiba Hebrew Academy v. Lower Merion Twp., 90 Montg. Co. L.R. 241 (1968)."

It has also been held that if the original condition no longer serves the original purpose, a zoning board can remove that restriction: Old Gladwyn Zoning Hearing Bd. v. Lower Merion Township, 100 Montg. 367 (1975). In any case, the restriction should be removed.

Appellant testified that when he sought the special exception in 1970, he was not in a position to

argue about the conditions imposed. The obtaining of a new car agency franchise and the purchasing of the real estate were based on zoning approval. A turn down or a long delay would be fatal to obtaining the franchise. He, therefore, was in a weak bargaining position, to say the least. A perusal of some of the conditions imposed and to which appellant had to agree in writing before he would obtain the special exception indicates the unfairness involved. Condition (3), all signs to be set back 75 feet (later amended to 25 feet); (5) no display cars closer than 75 feet to the highway; (6) banning the purchase of used cars at auction, and (13) no body work on the premises. (See board opinion, 1970.)

The latter condition, banning body work, was clearly uncalled for. The ground was zoned B-Business and the use clearly allowed. The board gave no reason for this condition and it is contended that there is none. Doing body work was not a nuisance then and it is not now. Indeed, allowing a new car agency and banning body work is allowing the church, but barring prayer.

There was no evidence produced that doing body work would be harmful to the surrounding area. As set forth aforesaid, the property is located in a commercial area which is zoned for commercial uses. The nearest residence is in another township, over one-half mile away. The topography offers a natural screen from the view of pedestrians or motorists traveling past on a highway where the normal speed is the maximum and more.

In the case of Every Clean, Inc. 41 D. & C. 2d 536 (1966), Judge Lippincott, of this court held that the appellant's agreement to the imposition of conditions is the result of unequal bargaining and such agreements should only be enforced when the

agreement is fair and reasonable. In that case, the court voided a condition requiring the presence of an attendant at a laundromat, said condition having been imposed at a prior hearing. See also In re Winkelman, 61 Berks 118 (1969), where the court held that a zoning board has the power to rescind an invalid condition alloted to a prior variance.

No testimony was introduced to show that the condition imposed was reasonable or legal nor does the board's opinion in 1970 cite any facts for its conclusions nor do the notes of testimony contain any testimony to this effect.

It is also clear that the conditions banning auto body repair serves no present useful purposes if it ever served a purpose at all. As set forth above, the evidence clearly shows that the performing of body work would have no adverse effect on the surrounding area. The property is located in a commercial area which is zoned for commercial uses. The nearest residence is over one-half mile away. The topography offers a natural screen from the view of pedestrians or motorists traveling past on Route 202. No one, homeowner or business, would be even remotely affected by the proposed use.

The board, however, obviously realizing that there was no testimony to support the imposition of Condition No. 13 in 1970, label No. 13 not a condition, but a limitation of use since appellant did not include body work in his application of 1970. Thus it concluded that since some reference was not contained in the original application in 1970 to performing body work, appellant is forever barred from doing body work on the premises.

It is elementary that a special exception is a permitted use and once it is granted, anything which normally accompanies that use is included. In Bor-

den Appeal, 369 Pa. 517, 87 A. 2d 465 (1952), the Supreme Court held that even though a restaurant dining room as a separate use was not allowed in the zoning district in question, such a use came within the normal operation of a large apartment house and it was, therefore, allowed. The court stated that a zoning ordinance cannot permit a butcher shop and prevent the sale of pork. In effect, a zoning hearing board should not try to regulate a business.

## CONCLUSION

We find, therefore, that appellant should be permitted to expand his nonconforming use by using part of the new addition for body work and that the zoning hearing board erred in not removing the condition attached to the special exception granted by the board in 1970.

We make the following

## ORDER

And now, January 7, 1981, upon consideration of the record and briefs submitted by the parties, it is ordered and decreed that:

1. The appeal of Thomas F. Lawrie, Sr. and Concord Volkswagen, Inc. from the decision of the Zoning Hearing Board of Concord Township dated December 27, 1979, be and the same is hereby sustained;

2. The decision of the Zoning Hearing Board of Concord Township dated December 27, 1979, be and the same is hereby reversed;

3. Appellant's petition for special exception as presented to the Zoning Hearing Board of Concord Township, be and the same is hereby granted.