Darling *v.* Zoning Board of Adjustment of Philadelphia (et al., Appellant).

Argued June 30, 1947. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

reargument refused November 10, 1947.

*G. Levering Arnhold,* for intervenor, appellant.

*Nathan Miller,* for property owner, appellee.

*G. Coe Farrier,* for Zoning Board of Adjustment of Philadelphia.

OPINION BY MR. JUSTICE LINN, September 29, 1947:

This appeal involves the construction of the Philadelphia Zoning Ordinance approved August 10, 1933,

passed pursuant to the enabling act of May 6, 1929, P. L. 1551, 53 P.S. 3822. In such appeals our review is limited to seeing that the proceeding is free from mistake of law: *Veltri Zoning Case,* 355 Pa. 135, 49 A. 2d 369; *Fleming v. Prospect Park Board,* 318 Pa. 582, 178 A. 813.

The property involved is a one-story building described as No. 515 West Pelham Road, Philadelphia. It is in a district zoned as "B Residential." Joseph Darling applied for and received a use-registration permit to repair it and use it for a tailoring shop. Edward Trainer, owning a neighboring dwelling, obtained leave, on behalf of himself and property owners similarly situated, to intervene as a party opposing the application. The City of Philadelphia was also granted leave to intervene. Trainer appealed to the Zoning Board of Adjustment complaining that the proposed change in use would conflict with the ordinance. The Board, after public hearing and inspection, sustained the appeal and directed the permit be revoked. Darling then appealed to the common pleas. The case was tried before Judges SMITH and ALESSANDRONI. The court found that the building was constructed about 1906 and had been used from 1927 to 1938 "as an office for builders, architects, and/or real estate operators," and that "it is now vacant and in a dilapidated condition." The court first dismissed the appeal but on reconsideration sustained it and directed that the permit be granted.

In 1933 the property was in use for what thereafter would have been a nonconforming use. Section 4 (2) of the ordinance provides: *"Any building* or the use of any building existing at the time of the passage of this ordinance that does not conform in use, height, location, size or bulk with the regulations of the district in which it is located, shall be considered a nonconforming building or use, and may continue such use in its present location, but shall be subject to the regulations covering non-conforming uses."

The "regulations covering nonconforming uses," referred to in that section, appear in section 4 (3) and (4) which provide: "(3) CHANGE OF USE. A nonconforming building or use shall be considered as such unless and until it complies with the regulations of the district in which it is located. Such use shall not be changed to a use designated for a district having less restrictive regulations."

"(4) DISCONTINUED USE. A nonconforming use when discontinued may be resumed as the same class of use but cannot be resumed as a nonconforming use of a lower class."

The provision in sub-paragraph (3) that the "use shall not be changed to a use designated for a district having less restrictive regulations," should be considered with sub-paragraph (4) providing that a discontinued nonconforming use may be resumed "as the same class of use but cannot be resumed as a nonconforming use of a lower class." In applying those provisions it is necessary to consider the classification made by the ordinance. Section 5 provides, "The classes of districts shall be known as: Residential Districts, Commercial Districts, Industrial Districts, Least Restricted Districts, . . ."

The most restricted district is that in which use is restricted to dwelling houses and section 6 classifies such residential districts by letters from "A" to "F", inclusive. Commercial districts are less restricted than residence districts and in section 15 are divided into classes lettered from "A" to "D".

Sub-paragraphs (3) and (4) of section 4 prohibit change of nonconforming use to a use designated for a district having less restrictive regulations, that is, the use or resumption of use may not be for a use designated for a Commercial, Industrial or Least Restricted District, the classes named in section 5. The draughtsman of the ordinance doubtless had a reason for stating the provisions in the forms adopted, but they mean sub-

stantially the same thing as the much shorter provision contained in the ordinance considered in *Haller Baking Company's Appeal,* 295 Pa. 257, 259-260, 145 A. 77, which provided, "The lawful use of land existing at the time of the adoption of this ordinance, although such use does not conform to the provisions hereof, may be continued, but, if such nonconforming use is discontinued, any future use of said land shall be in conformity with the provisions of this ordinance."

The court said, "A tailor shop therefore is in a lower class of this nonconforming use," and it was agreed that a tailor shop is not a permissible use of property in this "B Residential" district. Being in a lower class, that is, being designated for a "district having less restrictive regulations" than residential districts, it is a use expressly prohibited in this "B Residential" district by both subsections (3) and (4) of section 4, supra. The court erred in allowing a change of a nonconforming use to a use designated for a district having less restrictive regulations.

Another matter should perhaps be mentioned. Section 8 of the enabling act (May 6, 1929, P. L. 1551, 53 P.S. 3829) empowers the Board of Adjustment "3. To authorize, upon appeal, in specific cases, such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done." The first opinion written by the court below, in which the appeal was dismissed, stated that Darling contended that the Zoning Board was "guilty of an abuse of its discretion in not availing itself of this provision." The court held that in the circumstances there was no abuse of discretion. Briefly stated, the circumstances were these: The applicant for the permit, Joseph Darling, was not the owner of the property in 1933 or at any other time during which there

was an exercise of a nonconforming use. It appears that he became the holder of a mortgage on the property by assignment dated April 6, 1946, and that he took possession on the mortgagor's default. He testified that he had been familiar with this property for 15 years and knew that it had not been used since 1938. He therefore obtained whatever interest he has in the property, a matter not now necessary to be decided, with knowledge of the nonconforming use subject to regulation by the statute and the ordinance. The effect of the provision quoted from the Act was not presented to us in the argument because after the first hearing the court reconsidered its order dismissing the appeal and made the order now before us reversing the Board and directing the reinstatement of the permit. This order, for the reasons we have stated, we are required to reverse.

The order appealed from is reversed; the record is remitted with instructions to reinstate the order of the Zoning Board revoking the use-registration permit granted to Joseph Darling, costs to be paid by him.