## Crawford Zoning Case.

Argued January 6, 1948. Before MAXEY, C. J., DREW, LINN, STERN, STEARNE and JONES, JJ.

*Theodore Smithers,* with him *Fronefield Crawford,* for appellant.

*Edward H. Bryant, Jr.,* with him *Raymond E. Zickel, Charles K. Peters,* and *Lutz, Fronefield, Warner & Bryant,* for appellee.

OPINION BY MR. CHIEF JUSTICE MAXEY, March 22, 1948:

This is an appeal from the decree of the Court of Common Pleas of Delaware County sustaining the action of the Board of Adjustment of Radnor Township, Delaware County, affirming the building inspector's refusal to issue a building permit to appellant.

The applicable sections of Township Ordinance No. 345 are as follows: Article IV: B. Residence District "Sec. 405. In case of a single-family dwelling there shall be two side yards, one on each side of the main building, the aggregate widths of which shall be at least twenty (20) feet. Neither side yard shall be less than eight (8) feet wide. . . ."

"Sec. 407. There shall be a rear yard, the depth of which shall be at least twenty-five (25) feet. . . ."

Article XI, Sec. 1101 (c) reads: "To authorize, upon appeal, in specific cases, such variance from the terms of this Ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of this Ordinance will result in unnecessary hardship, and so that the spirit of this Ordinance shall be observed and substantial justice done."

In May 1946 Winfield W. Crawford was the actual owner of premises situate at the northwest corner of Lansdowne Avenue and West Audubon Avenue, Radnor Township, Delaware County, Pennsylvania. Record title was in the name of Elva G. Reinecker. The premises extend northwardly along Lansdowne Avenue 248.14 feet from the intersection; and westwardly along West Audu-

bon Avenue 200.67 feet from the intersection. The improvements on the premises consist of a large dwelling house occupied by appellant and another building originally constructed as a stable, with coachman's living quarters above equipped with a bedroom and bathroom. The dwelling house faces West Audubon Avenue and is centrally located on the front portion of the property. The stable, used as a garage and place of storage, is located at the northwest corner of the property, and faces West Audubon Avenue. It is about 40 x 40 feet in size. The north side of the building is five and eight-tenths feet from the property line on the north, and the west side of the building is eight and five-tenths feet from the property line on the west.

On May 2, 1946, Elva G. Reinecker, record title holder, applied to the building inspector of Radnor Township, a first class township, for a permit to make certain specified interior alterations to the garage located on the property for the purpose of converting it into a "single family detached dwelling." The application stated that the length of the rear yard was 8.5 feet and the width of the side yards was given as 5.8 feet and 37 feet. The size of the lot was stated as being 83.14 feet x 200.67 feet. The building inspector rejected the application since the dimensions of the rear yard and side yards did not meet the requirements of sections 405 and 407 of Article IV of Ordinance No. 345. An appeal was filed with the Board of Adjustment. At the hearing Elva G. Reinecker was represented by Winfield W. Crawford, real owner, who testified that Miss Reinecker was holding title "in straw" for him. The Board sustained the inspector's decision. No appeal was taken from the Board's action to the Court of Common Pleas.

On September 14, 1946, Winfield W. Crawford, the then record holder of the title, filed an application with the building inspector substantially identical with that filed by Miss Reinecker. The following dimensions were given: Length of rear yard—8.5 feet, width of side yards

—5.8 feet-77.69 feet; size of lot—83.14 feet x 200.67 feet x 83.49 feet x 200.67 feet. The application was again rejected for insufficient side and rear yard requirements. Mr. Crawford appealed to the Board requesting a variance from the terms of the Ordinance as provided by Section 1101 (c), Article XI. The board entertained the appeal and proceeded to take testimony. Appellant testified that he had sold the main dwelling house in which he resided and wished to use the garage as his personal residence. The building already contained a bedroom and bathroom on its second floor. Once again the board entered an order affirming the decision of the inspector. Crawford thereupon appealed to the Court of Common Pleas. The issues tried on appeal were: (1) Was the appellant presently concluded by the earlier action of the board of adjustment?; and (2) If not, was the board of adjustment guilty of an abuse of discretion in refusing to authorize a variance from the terms of the Ordinance, in the circumstances disclosed by the evidence?

Appellant contends the Board committed a manifest abuse of discretion in disallowing the petition since its action had no relationship to the public health, safety, morals and general welfare. He states: "The building exists at the present time and its location is fixed. Whether it is unoccupied, or is occupied, has no bearing on its relationship with other buildings. Any fire hazard will not be increased by occupancy. Light and air cannot be affected by occupancy." The applicant also avers that a strict compliance with the ordinance will impose an "unnecessary hardship" on him. Action in conformity with its provisions will require the physical removal of the garage to another part of the premises in order to meet the requirements as to the side and back yards. This will involve a cost of approximately $3,500 for moving the building and will also necessitate uprooting six or eight large trees. By adjusting the position of the garage, it will be located closer to the dwelling house formerly occupied and owned by appellant, and closer

to the nearest structure on the premises to the west, but it will be farther away from the dwelling house on the premises to the north. The cost of the proposed alterations is estimated at $3,000 or $3,500 and involves, as testified to by appellant, using "the stable of the house for a livingroom and divide the carriage house in two, using the southerly side of it for a garage, which would be under the same roof, and the other, the northerly side of the room, for a kitchen and dinette." He adds: "It is also my intention, if I am able to obtain the necessary material in due course, to put in another bathroom and make what is now, or was, the hayloft of the stable into a bedroom."

The court properly held that the board's earlier action with regard to the application submitted by Elva G. Reinecker did not conclude appellant's rights since the board entertained the second appeal and decided it on its merits. With respect to the second issue determined by the court, mentioned supra, the Chancellor concluded that no such flagrant abuse of its discretion was committed by the Board as would warrant a reversal of its decision; "nor does the fact that it will cost an appreciable sum to move the structure to another part of the premises, constitute unnecessary hardship." The Chancellor stated: "Appellant knew of these provisions when he sold off the front part of the premises, retaining the rear portion with the garage, and knew then that the earlier application, involving the identical variance now in question, had been refused. He cannot complain of a hardship which results, in part, from his own actions."

In an appeal of this nature, our review is as on certiorari. *Berman et ux. v. Exley et al.,* 355 Pa. 415, 50 A. 2d 199; *Veltri Zoning Case,* 355 Pa. 135, 49 A. 2d 369. Whether the board's refusal to certify the requested variance is tantamount to a manifest abuse of discretion is the sole factor to be adjudged, *Jennings' Appeal,* 330

Pa. 154, 198 A. 621; *Fleming v. Prospect Park Board of Adjustment,* 318 Pa. 582, 178 A. 813.

In cases of this kind the issue is: Are there "special conditions" which make "a literal enforcement of the provisions" of the ordinance "an unnecessary hardship" on a property owner? The issue can also, under the section of the Township Ordinance quoted in paragraph two of this opinion, be expressed in this way: If "the variance" asked for be granted, will "the spirit of this Ordinance" "be observed and substantial justice done." Under the facts here present, there *are* "practical difficulties" and "unnecessary hardships" involved in forcing the appellant to comply literally with the letter of the Ordinance; the variance he asks for can be allowed, with due observance of "the spirit of the ordinance" and with no insecurity to "the public health, safety and public welfare."

To require the appellant to move an existing building 2.2 feet south and 16.5 feet toward the front of the lot in order to come within the exact terms of the zoning ordinance confronts him with a "practical difficulty" and imposes on him in these days of scarce and expensive labor an "unnecessary hardship" to the extent of $3,500 with no commensurate benefit to the "public health, safety and general welfare." We do not perceive how "the public health, safety and general welfare" will be prejudiced by permitting the appellant to convert an existing "garage or carriage house" into a "single family dwelling" in these days of unparalleled shortage of dwelling houses. The refusal of the permit asked for was based on the fact that the structure when converted into a dwelling house will *not* have "two side yards of not less than 8 feet and a rear yard of at least 25 feet," as the zoning ordinance requires. Exactly *what* the size of a side yard and the size of a rear yard should be in such locality is a question which must have been determined arbitrarily by the authorities in the first place, for there is no fixed standard by which it can be in-

fallibly determined that dwelling house side and back yards or a certain size are detrimental to "public health, safety and general welfare." That the building appellant wishes to alter is amply surrounded by space which is vacant, except for desirable trees, is indicated by the fact that the building is sixty (60) feet from the dwelling on the premises to the west, sixty (60) feet from the dwelling on the premises to the north, and ninety-five (95) feet from the dwelling to the south, and if the building is moved to the center of the lot, it will be forty-nine (49) feet from the dwelling to the west, sixty-seven (67) feet from the dwelling to the north, and sixty-six (66) feet from the dwelling to the south. If the building is moved two and two-tenth (2.2) feet southwardly and sixteen and five-tenths (16.5) feet eastwardly in order to comply with the Ordinance, it will be located closer to the dwelling to the north.

The requirement as to the ample side and back yards is based on æsthetic considerations as well as upon considerations of health and safety from fire hazards. Perhaps the æsthetic consideration is the paramount one in a "B Residence District," such as the one in which the building in controversy is located. Side yards and back yards of substantial uniformity in size adds materially to the "good looks" of a residential district. But it is not essential to "good looks" that *all* of the back yards be of *exactly* the same size, and whatever loss of landscape beauty may be occasioned by the fact that the garage now in existence will, when converted into a residence, have a side yard which is 2.2 feet narrower than the standard for that vicinity and that the back yard will be in length 66 percent smaller than the standard will be compensated by the fact that at least six beautiful trees will be saved if the appellant is *not* required to move his garage in two directions, the distances indicated. Shade trees add great æsthetic value to any residential district and any Zoning Board which has due regard for the beauty of a residential area will

hesitate to demand an act which will require the destruction of beautiful trees in order to obtain conformity to the strict letter of a zoning regulation. In almost any scale of values, shade trees in front of a property outweigh a back yard 25 feet in length.

The appellee cites in justification of the action of the Zoning Board the case of *Kurman et al. v. Philadelphia Zoning Board of Adjustment et al.,* 351 Pa. 247, 40 A. 2d 381. In that case the Zoning Board refused to authorize the use of a building both as a dwelling and also as a place of religious worship when the side yards of the building did not conform to the requirements of the zoning ordinance relating to the latter type of use. In that case the lack of conformity was due entirely to a bay window which projected into the fifteen foot area required for a side yard. There the court below said that if the plaintiffs desired to use the building for a purpose other than a dwelling house they could meet the requirements of the Zoning Ordinance by a comparatively minor alteration at that one point, i.e., by removing the bay window.

If in the instant case all that was required of the appellant was a minor alteration, such as the removal of a bay window, we would hold that the Zoning Board acted with due discretion in requiring the appellant to do so in order to conform to the Zoning Ordinance. But in the instant case, as already pointed out, the alteration required means the moving of the building at a cost of $3500 and it also means the destruction of valuable and ornamental shade trees. Under this situation, the action of the Board of Adjustment in refusing the application of the appellant for a permit to make certain interior alterations to an existing building so as to convert the same into a dwelling house was a manifest and flagrant abuse of discretion, as that phrase is used in our opinions.

What President Judge MACDADE said in his dissenting opinion in this case is pertinent, to wit: "The use of

a property for dwelling purposes is considered to be the most desirable of all uses. . . . Any restriction in the use of a property based on the police power of a municipality must bear some relationship to the public health, safety, morale and general welfare of the community. . . . What possible public interest can be served by compelling Appellant to move the building two and two-tenths feet in one direction and sixteen and one-half feet in another direction? The adjoining buildings are fixed at their present location. . . . Who can possibly be harmed by the allowance of the variance?"

The decree is reversed; each party pays his or its respective costs.