Rolling Green Golf Club Case.

Argued April 27, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY and ARNOLD, JJ.

Appeals, Nos. 51, 70, 71 and 72,

*Read Rocap, Jr.,* for Springfield Township, appellant.

*R. Winfield Baile,* attorney for intervenors, appellants.

*Edward H. Bryant, Jr.,* with him *Lutz, Fronefield, Warner & Bryant,* for Rolling Green Golf Club, appellee.

OPINION BY MR. JUSTICE BELL, June 26, 1953:

Two important questions are involved: (1) Has a golf club which is situate in a so-called residential district which authorizes municipal buildings and a passenger railway station and accessory uses, a right to construct a driveway through a property it has purchased for purposes of ingress and egress to the club? and (2) What are the powers of a Court of Common

Pleas on an appeal from a Board of Adjustment's Order denying an application to build such a road?

Rolling Green Golf Club has been in existence since 1925. The Township of Springfield adopted a Zoning Ordinance No. 167 on November 16, 1938. The golf club, including its 146 acres of ground, is situate within the so-called Class "A" Residential area established by the Springfield Ordinance. It has a membership of 335. Liquor is not permitted to be sold at the club and the club house is not kept open after 11 o'clock at night.

In August, 1951 the club purchased a lot of ground 85 feet front on the northerly side of Northcroft Road, with an irregular depth of 114 feet by 133 feet. The property extends back to the club's land and adjoins the club's automobile parking lot. The club now has a driveway for purposes of entrance and exit on State Road, but considers it insufficient. It wishes to build a 20 foot road on its new property to connect with its present parking lot. The new lot will be used only for a driveway and there will be no putting green, pro shop or any structure whatever erected thereon, nor will parking of automobiles be permitted.

For centuries in England and for over 150 years in this land whose most precious heritage was liberty, an owner of land could do anything he wished with his property provided it did not interfere with his neighbor's property or create a nuisance or violate any covenant, restriction or easement, or (in this country) violate any provision of the Federal or State Constitution. In the last quarter of a century planning commissions and zoning boards have been created and multiplied; as a result many zoning ordinances have been passed to restrict the use of property in a manner and to a degree which the planners thought would be best for that particular community. The constitutionality of zoning ordinances has been sustained by the Courts as

structural or general legislation whenever the act or ordinance is clearly necessary for the preservation of public health, safety, morals or general welfare, and not unjustly discriminatory or arbitrary or unreasonable, or confiscatory in its application to a particular or specific piece of property: *Lord Appeal*, 368 Pa. 121, 81 A. 2d 533, and a host of cases therein cited.

In *Lord Appeal* we said (pages 126, 130) : "Restrictions imposed by zoning ordinances are, however, in derogation of the common law and (at times) of the liberties, rights and privileges guaranteed by the Constitution of the United States and the Constitution of Pennsylvania and therefore must be strictly construed: Lukens v. Zoning Board of Adjustment, 367 Pa. 608, 80 A. 2d 765; Kline v. Harrisburg, 362 Pa. 438, 451, 68 A. 2d 182.

. . . in the leading case of White's Appeal, 287 Pa. 259 [the Court said] . . . '. . . all property is held in subordination to the right of its reasonable regulation by the government clearly necessary to preserve the health, safety or morals [or general welfare] of the people. . . . There is one matter that is quite certain, *the power to thus regulate does not extend to an arbitrary, unnecessary or unreasonable intermeddling*\* with the private ownership of property, even though such acts be labeled for the preservation of health, safety and general welfare. . . . While such regulations may not physically take the property, they do so regulate its use as to deprive the owner of a substantial right therein without compensation. "We are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change": Pennsylvania Coal Co. v. Mahon, 260 U.S. 393,

---

\* Italics throughout, ours.

416. . . . . "To secure their property was one of the great ends for which men entered society. The right to acquire and own property, and *to deal with it and use it as the owner chooses so long as the use harms nobody, is a natural right.* It does not owe its origin to constitutions. It existed before them. *It is a part of the citizen's natural liberty,*—an expression of his freedom,— *guaranteed as inviolate by every American bill of rights*": Spann v. Dallas, 111 Tex. 350, 235 S.W. 513. . . . Each case must of course be decided on its own facts. . . . Where a statute or ordinance interferes with the use and control of property without rational relation to public safety, health, morals or general welfare, or is a palpable invasion of rights secured by the fundamental law, the enactment cannot be sustained as a legitimate exercise of police power. . . . To bring this, [the set back of the front wall of a building nearer to the street line than the distance established by the majority of buildings already constructed at date of ordinance] and other like regulations, under the police power, would be to sweep away constitutional guarantees on the ownership of property. It is regulation run mad.' "

In the light of these authorities we shall examine the zoning ordinance here in issue. The Ordinance provides: "Article III. Residence Districts. Section 300. In residence districts the following regulations shall apply. Section 301. A building may be erected, altered or used, *and a lot or premises may be used* for any of the following purposes: 1. Single detached dwelling. . . . 3. Farm, municipal administration buildings, *railway passenger station,* telephone central office, or, when authorized as a special exception, a golf course including a club house but excluding a miniature golf course, public driving range or similar business use. . . . 5. Accessory use on the same lot with and customarily incident to any

of the above permitted uses and not seriously detrimental to a residential neighborhood, including a private garage."

It will be noticed immediately that the zoning ordinance makes no reference to a driveway or road, but permits in this residential district the erection, alteration or use of, inter alia, (1) municipal buildings; and (2) a railway passenger station; and (3) when authorized as a special exception, a golf course. If a golf course were authorized as a special exception, no one would contend that the club could not have a driveway for purposes of ingress and egress. However, Rolling Green already has a driveway for ingress and egress opening onto State Road, and the question is, can it be prohibited from building an auxiliary driveway on its new lot to connect with Northcroft Road, which is a public road and part of the Township highway system. It may not be amiss to note that if a railway passenger station were erected (as unquestionably permitted by the ordinance), experience shows that the number of automobiles going to and from the station would, in all probability, far exceed the number of automobiles which might use the golf club's proposed driveway.

The golf club immediately after the purchase of the new lot applied for a special exception to build an auxiliary 20 food wide driveway from Northcroft Road through its new lot to its present property, in order that its members who came from the east could more readily and quickly get to the club, as well as for fire and water protection. The board of adjustment held a hearing and denied the (use and the) exception. An appeal was taken to the Court of Common Pleas which in turn held a hearing and, after taking testimony, authorized the driveway and directed a permit to be issued to the golf club as requested in its aforesaid applications for a special exception.

The neighbors who live on Northcroft Road vigorously objected to the proposed driveway because of the increased traffic, noise, dirt and' hazards, which would in all likelihood result. Even without a railway passenger station or a golf club, these unpleasant burdens are some of the inevitable accompaniments of suburban progress and of our constantly expanding population. Thus we have once again the conflicting rights of a land owner to do any lawful act he wishes on his property (subject to the limitations hereinbefore set forth), and the right of a zoning board or similar sovereign to restrict for (what they sincerely believe is) the benefit of the public, the fundamental rights which a property owner has possessed since antiquity.

The right of a property owner to have (or build) a road over his own land to connect with a public road has been recognized for centuries as one of his fundamental inalienable rights. The right of ingress and egress has always been considered such an important right that the law from very early time even gave a neighbor a way of necessity *over the property of another*! See 2 Blackstone's Commentaries 35; 3 Kent Commentaries 420; *Borstnar v. Allegheny County,* 332 Pa. 156, 159, 2 A. 2d 715; *Com. v. Burford,* 225 Pa. 93, 98, 73 A. 1064. If a permit were sought for a 20 foot wide driveway on land owned and used for a private residence, the landowner's right would be so clear that no Court would consider even for a second, refusing it.

Did the present ordinance—which must be strictly construed where it is in derogation of fundamental or common law rights—prohibit this property owner from using part of its land for a driveway? It certainly does not say so either expressly or by clear and necessary implication and therefore it is clear that it did not intend to attempt to deprive a landowner of this important ancient fundamental right. Appellant fails to

realize that this is not an application for a variance, i.e., undue or unnecessary hardship; this is not a case where a non-conforming owner wishes to extend or expand his building or plant,* or to erect or use a building contrary to the terms of an ordinance. This is a case where, we repeat, a landowner wishes to construct on its own lot a 20 foot driveway which is *nowhere prohibited* by the ordinance in question and is to be constructed in a township where, as present and future landowners know, the ordinance does not limit the community to private residences, but itself specifically permits buildings and uses which will produce far greater traffic and use of roads than will occur from the construction of this proposed driveway.

All these facts, factors and circumstances make clear that under this ordinance a property owner, even though it be a golf club, has a lawful right to build a 20 foot wide driveway on its new property unless circumstances are shown which make such a driveway seriously detrimental to the kind of a residential neighborhood which this ordinance permits. No such circumstances were shown and the Court below could properly find that the Board of Adjustment had abused its discretion.

Did the Court of Common Pleas have the power to hear the appeal from the board of adjustment, to take testimony, and to make such decision as was just and proper under the evidence and the applicable principles of law?

The First Class Township Law of 1931 was amended by the Act of May 27, 1949, P. L. 1955, §59, to read as follows: "Any person aggrieved by any decision of the board of adjustment, . . . may . . . appeal to the court of common pleas of the county by petition . . . setting

---

* *Humphreys v. Stuart Realty Corp.*, 364 Pa. 616, 621, 73 A. 2d 407; *Kellman v. McShain*, 369 Pa. 14, 18, 85 A. 2d 32.

forth that such decision is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, specifying the grounds upon which he relies, . . . .

"If, upon hearing of the appeal, it shall appear to the court that testimony is necessary for the proper disposition of the appeal, *it may take evidence* . . . . *The court may reverse or affirm, in whole or in part,* the decision appealed from as to it may appear just and proper."

We hold that the Court of Common Pleas had the power to hear the appeal from the decision of the board of adjustment in this case; and having such power, it had the right to hear evidence and to make such decision as, under the evidence and the applicable principles of law, was just and proper.

In *Dooling's Windy Hill v. Springfield Township,* 371 Pa. 290, 89 A. 2d 505, where the power of a Court of Common Pleas (in an appeal from refusal of a variance by the board of adjustment) was involved, Mr. Justice JONES said (page 297) : ". . . In such situation, the court is authorized by the statute . . . to 'reverse or affirm, in whole or in part,' the action of the board as, to the court, 'may appear just and proper'. In short, it is the province of a court of common pleas, upon an appeal from an order of a board of adjustment, to consider and dispose of the matter on the merits: Lindquist Appeal, [364 Pa. 561, 74 A. 2d 378]. . . ."

On appeal from a decision of a Court of Common Pleas in a zoning matter the case comes before an appellate Court as on certiorari, and where there is adequate evidence to support the findings of the Court below and the proceeding is free from error of law and there has been no manifest abuse of discretion, the decision will not be reversed. Cf. *Dooling's Windy Hill v. Springfield Township,* 371 Pa., supra; *Lindquist Appeal,* 364 Pa., supra.

In this case there was adequate evidence to support the findings of the lower Court, and there was neither error of law nor abuse of discretion.

The decree of the Court of Common Pleas is affirmed; each party to pay its own costs.

Mr. Justice JONES dissents.