## Walker *v.* Zoning Board of Adjustment (et al., Appellant).

Argued November 16, 1954. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and AR-NOLD, JJ.

*William E. Schubert, Jr.,* with him *Thomas M. Schubert* and *Schubert & Schubert,* for appellant.

*H. Francis DeLone,* with him *Thomas Thatcher, Robert M. Landis* and *Barnes, Dechert, Price, Myers & Rhoads,* for appellees.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, January 6, 1955:

The only question in this case is whether a certain institution operated by the plaintiff is to be deemed a "school" or a "sanitarium" within the meaning of a zoning ordinance of the City of Philadelphia.

Plaintiff, Mabelle S. Walker, is the purchaser, under an agreement of sale, of premises 6399 Drexel Road, Philadelphia. She filed an application with the Zoning Division of the Department of Licenses and Inspections for a permit to use those premises for a school for physically handicapped children. The Zoning Division denied her application and, on appeal, the Zoning Board of Adjustment likewise refused her request. Thereupon the plaintiff took her case to the Court of Common Pleas No. 3 of the County of Philadelphia, which reversed the decision of the Zoning Board on the ground that its action was arbitrary, capricious, and without foundation in the evidence, and it remanded the record to the Board with direction to issue the permit for which application had been made. Overbrook Farms Club, which intervened in the proceedings, now appeals from that order of the court.[1] Since the Act of May 6, 1929, P.L. 1551, which deals with zoning ordinances of cities of the first class, does not provide for any appeal from the court below our review is merely as on certiorari and we examine the record only to see whether there is any evidence to sustain the findings and whether the proceeding is free from a violation of positive law and any flagrant abuse of discretion.[2]

---

[1] Neither the Zoning Board nor the City of Philadelphia has joined in the appeal.

[2] *Anderle Appeal*, 350 Pa. 589, 592, 39 A. 2d 829, 830; *Veltri Zoning Case*, 355 Pa. 135, 137, 49 A. 2d 369, 370; *Berman v. Exley*, 355 Pa. 415, 416, 50 A. 2d 199, 200; *Darling v. Zoning Board of Adjustment of Philadelphia*, 357 Pa. 428, 429, 54 A. 2d 829; *Triolo v. Exley*, 358 Pa. 555, 558, 57 A. 2d 878, 880; *Crawford Zoning Case*, 358 Pa. 636, 640, 57 A. 2d 862, 864; *Imperial Asphalt Corporation of Pennsylvania Zoning Case*, 359 Pa. 402, 405, 59 A. 2d 121, 123; *Reininger Zoning Case*, 362 Pa. 116, 117, 118, 66 A. 2d 225, 226; *Lindquist Appeal*, 364 Pa. 561, 566, 73 A. 2d 378, 381; *Borden Appeal*, 369 Pa. 517, 519, 520, 87 A. 2d 465, 466; *Dooling's Windy Hill,*

The premises in question are situated in a district designated "A" Residential by the Philadelphia Zoning Ordinance of August 10, 1933, as amended. Subsections 5 and 7 of Section 7 of the Ordinance provide that the uses permitted in such a district shall be: "(5) Schools, colleges, universities, convents and dormitories . . . (7) Hospitals, sanitaria, eleemosynary and public institutions (other than correctional), provided, any such use is not prejudicial to the public health or welfare." Subsection 21 provides: "Hospitals, sanitaria, eleemosynary and public institutions (other than correctional), shall be located at least seventy-five (75) feet from any adjoining lot or lots."

It is admitted that the building on the premises 6399 Drexel Road, which has heretofore been occupied as a residence, falls somewhat short of the 75' requirement. If, therefore, the property is to be regarded as a "sanitarium" the application was properly denied, but if for a "school" the application should have been granted since the ordinance does not provide for such a requirement in the case of schools.

Plaintiff is a graduate clinical psychologist with 30 years' specialized experience in the education of physically handicapped children. She has long conducted an institution for the education of such children at a property on City Line Avenue, which premises, however, have been sold, so that she now wishes to remove to the Drexel Road property. The school is licensed by the Private Schools Division of the Department of Public Instruction of this Commonwealth as a "private academic school or class in 'special educa-

*Inc., v. Springfield Township Zoning Board of Adjustment,* 371 Pa. 290, 294, 295, 89 A. 2d 505, 507; *Rolling Green Golf Club Case,* 374 Pa. 450, 458, 97 A. 2d 523, 527; *Pincus v. Power,* 376 Pa. 175, 181, 101 A. 2d 914, 916; *Gish v. Exley,* 153 Pa. Superior Ct. 653, 655, 34 A. 2d 925, 926; *Deane v. Edgeworth Borough Board of Adjustment,* 172 Pa. Superior Ct. 502, 505, 94 A. 2d 112, 113.

tion . . . physically handicapped children'," and she is duly certificated as a teacher by that Department. The school is under the supervision, not of the Department of Welfare, which has general supervision of sanitaria, but of the Department of Public Instruction. None of the children in attendance are "mental cases" but are merely handicapped physically, all except one being afflicted with cerebral palsy. There are 36 students, 20 of whom commute daily from home and the remaining 16 board at the school because they come from distant points. Following the ordinary school schedule, classes are from 9 a.m. to 3 p.m. on weekdays, and the curriculum covers the courses which are generally given from kindergarten through high school; some of the graduates matriculate in college. There is the usual summer vacation period although 3 of the students who come from faraway places remain during the summer months because the distances from their homes prevent travel back and forth. The staff consists of from 18 to 20 persons, 12 of whom are instructors, the rest consisting of household employes and assistants who give manual aid to the children. The principal difference between this school and the public schools is the high ratio of teachers to students, thus making possible a smaller size of the classes and enabling the students to obtain more individualized attention.

A "sanitarium" is defined in Webster's International Dictionary as "A health station or retreat; an institution for the recuperation and treatment of persons suffering from physical or mental disorders." Miss Walker's institution is not a sanitarium since it is not designed to give, nor does it give, treatment to its students for their physical disorders; it seeks to educate their minds, which are normal, not to cure their physical disabilities. It is a school the same as any other private school except that its students are physi-

cally handicapped. The ordinance, in employing the term "schools," makes no distinction between schools of different types.

The Zoning Division of the Department of Licenses and Inspections rejected Miss Walker's application on the ground that "any building used for a school for handicapped children is required to be at least 75′ from any lot or lots"; this obviously was erroneous because there is no such requirement in the ordinance for a school whether for handicapped children or otherwise. The Zoning Board of Adjustment rejected the application for the same erroneous reason; moreover, it stated that the appeal to the Board was for a variance, which was likewise erroneous since the permit was not sought as a variance but demanded as a matter of right under the terms of the ordinance.

The appellant cites *Jewish National Folk School's Case,* 327 Pa. 578, 195 A. 9, which dealt with a situation where the record showed that the applicant desired to use the premises for purposes in addition to what were described as school purposes. In the present case there is nothing to indicate that the use of the premises is to be for any purpose in addition to, or other than, that of intellectual education. As far as the *Devereux Foundation, Inc., Zoning Case,* 351 Pa. 478, 41 A. 2d 744, also relied upon by appellant, is concerned, the application for a variance was there rejected because of an express provision in the zoning ordinance that, while a building might be used for an educational use, any "structure or other place for accommodating . . . persons mentally deficient, weak or abnormal" was excluded, and it was therefore held that a dormitory which "accommodated" pupils who were "mentally deficient" and who constituted the student body of the institution, fell within the ban of the ordinance.

The order of the court below is affirmed.

CONCURRING OPINION BY MR. JUSTICE BELL:

I concur in the opinion of the Court. Because zoning problems have become so numerous and important, I believe our Court should avail itself of this opportunity to eliminate the confusion created by two conflicting lines of decisions in zoning cases, particularly in applications for a variance, viz., whether, *after testimony has been taken* in the court of Common Pleas, the test in that Court should be (1) "a manifest abuse of discretion" by the Board of Adjustment, or (2) "such decision as may appear to [that] Court to be just and proper,"—in other words, a decision on the merits.

Where no testimony is taken in the Court of Common Pleas the test for that Court is "whether the Board of Adjustment was guilty of a manifest abuse of discretion or an error of law"—if not, its order must be affirmed by the Court of Common Pleas: *Devereux Foundation, Inc., Zoning Case,* 351 Pa. 478, 41 A. 2d 744; *Perelman v. Yeadon Borough Board of Adjustment,* 144 Pa. Superior Ct. 5, 18 A. 2d 438.

Where, however, any testimony is taken in the Court of Common Pleas our cases are in conflict as to the proper test or yardstick.

With respect to cities of the first class and cities of the second class, the statute or ordinance *permits* the Court of Common Pleas to take testimony and to reverse or affirm, wholly or partly, or modify, the order of the Board of Adjustment. In the earlier cases, even where additional testimony was taken in the Court of Common Pleas, this Court has said that the lower Court should reverse only for a manifest abuse of discretion or an error of law. Cf. *Jennings' Appeal,* 330 Pa. 154, 198 A. 621; *Liggett's Petition,* 291 Pa. 109,

139 A. 619; *Berman v. Exley*, 355 Pa. 415, 50 A. 2d 199.

However, the statute or the ordinance relating to cities of the third class, as well as to townships, and boroughs, provides that the Court of Common Pleas *may* take testimony and "render such decision as to it may appear *just and proper.*" In cases arising under these Statutes we have held that whenever any testimony is taken in the lower Court, that Court has the power to decide the case on the merits: *Dooling's Windy Hill v. Springfield Township*, 371 Pa. 290, 89 A. 2d 505; *Rolling Green Golf Club Case*, 374 Pa. 450, 97 A. 2d 523; *Lord Appeal*, 368 Pa. 121, 81 A. 2d 533. In recent cases we felt this rule should prevail in all appeals to the Court of Common Pleas whenever testimony is taken in that Court: *Pincus v. Power*, 376 Pa. 175, 101 A. 2d 914; *Silverco, Inc. v. Zoning Board of Adjustment*, 379 Pa. 497, 109 A. 2d 147. The reasons are obvious—there is no real difference in the various Statutes, and the Board of Adjustment cannot be guilty of an abuse of discretion if it did not have the advantage of hearing the testimony which was presented in the Common Pleas Court and which might have caused it to render an entirely different decision. For these reasons I am convinced that the correct test is and should be the one set forth in the most recent cases, viz.: *Dooling's Windy Hill v. Springfield Township, Rolling Green Golf Club Case, Lord Appeal, Pincus v. Power* and *Silverco, Inc. v. Zoning Board of Adjustment,* supra.

Unfortunately in the recent case of *Catholic Cemeteries Association,** 379 Pa. 516, 109 A. 2d 537, the majority opinion relied upon *Reininger Zoning Case,* 362 Pa. 116, 66 A. 2d 225, and adopted "the manifest abuse of discretion" test laid down therein, without any notice of or reference to (1) the more recent deci-

---

* A case in which I did not sit.

sions of this Court which, as above stated, lay down a different rule, or (2) the fact that the law for cities of the third class (i.e. *Reininger*) had been changed by Statute since the *Reininger* decision to provide "as to it [the Court of Common Pleas] may appear just and proper."

In my judgment whenever testimony is taken in the Court of Common Pleas it has the power to decide the case on the merits. Whether this is or is not the correct test is important, but in view of the multitude of current zoning problems it is even more important to the Bench, the Bar, zoning boards and litigants that the present confusion be eliminated and the law be clarified and settled.

Mr. Justice MUSMANNO joins in this Concurring Opinion.