Food Corporation *v.* Zoning Board of Adjustment (et al., Appellant).

Argued January 9, 1956. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and AR-NOLD, JJ.

*Paul Yermish,* for appellant.

*Edmund B. Spaeth, Jr.,* with him *William R. Reynolds,* and *MacCoy, Evans & Lewis,* for appellee.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, March 13, 1956:

This is an appeal from a decree of the court below reversing an order of the Zoning Board of Adjustment; the appeal is not by the Board itself but by an intervenor in the proceedings.

Food Corporation, which owns a tract of vacant ground, 166 by 119 feet, on the south side of Cottman

Street between Algon Avenue and Somerdale Street in Philadelphia, applied for a use registration permit to build and operate thereon a drive-in, self-service restaurant, and, as accessory thereto, to maintain on the lot an off-street parking area. The tract in question is zoned "A Commercial." After a public hearing at which a number of neighboring residents protested against the proposed use, the Zoning Board of Adjustment refused the issuance of a certificate permitting the off-street parking. The Court of Common Pleas, on appeal, ordered the Board to issue an appropriate certificate granting such permission.

What the applicant proposed was to erect a one-story building, approximately 50 by 67 feet, at which it would serve light refreshments, soft drinks, and food that had been cooked in advance and kept on warm tables. Patrons were to park their automobiles on the premises, alight, enter the building, buy what they wanted, return to their cars, and there consume the purchased food. Section 16 of the Philadelphia Zoning Ordinance of August 10, 1933, provides for 26 specific uses permitted in districts zoned "A Commercial," among which, number 21, is "restaurants, cafes or catering." Both the Board of Adjustment and the Court of Common Pleas held that the applicant's project contemplated a restaurant within the meaning of the Ordinance, and apparently this conclusion was not questioned by either the intervenor-appellant or anyone else until the present appeal. Be that as it may, there is no merit in the contention now urged in that regard. A restaurant is defined in Webster's International Dictionary as "An establishment where refreshments or meals may be procured by the public; a public eating house," and while this no doubt assumes that the refreshments are to be eaten on the premises, that qualification is here complied with since the food *will* be

consumed there even though it be in automobiles stationed thereon. The applicant was clearly entitled to a permit for the erection and the use of a building as and for a "restaurant, cafe or catering."

The real issue presented is in regard to the use of part of the land as an area for off-street parking. Number 27 of the uses permitted in an "A Commercial" district, as specified in Section 16 of the Ordinance, provides for "Accessory uses customarily incidental to any of the above permitted uses." If, therefore, the use of the land for off-street parking by the patrons of the restaurant was an accessory use customarily incidental to the operation of a restaurant, the applicant would have been entitled to such accessory use as a matter of absolute right. We are in accord with the opinion of the court below that such an area for off-street parking was not such an accessory use. However, Section 26, clause (6), of the Ordinance provides for open air parking of automobiles in certain residential districts and in a commercial district if a Board of Adjustment certificate is obtained therefor.

The Court of Common Pleas held that the Board of Adjustment should have granted a certificate for such parking. This was not the case of an application for a variance, which would have imposed upon the applicant the burden of establishing that a refusal would work an undue hardship. The standards to be observed here in the granting or refusing of a certificate are those which are in harmony with the general purposes of zoning outlined in the enabling Act of May 6, 1929, P. L. 1551, §3, namely, the lessening of congestion in the streets, the promotion of health and the general welfare, the provision for adequate light, air and transportation, the prevention of the overcrowding of land, and certain similar requirements. It appears that at the corner of Cottman Street and Algon Avenue there

is a gasoline service station, and at the corner of Cottman and Somerdale Streets another gasoline service station with a 50-foot private parking lot used for storing automobiles awaiting service and which adjoins the land of the applicant. To the rear are the yards of a row of twin houses fronting on Englewood Street on the south but separated from the applicant's property by a 20-foot-wide city driveway. Notwithstanding these facts the Board of Adjustment concluded that the proposed use would be offensive because of likely noise and dirt and the operation of the restaurant to late hours of the night. The Board, having in mind that a new senior high school was being built on vacant ground on the opposite side of Cottman Street, expressed the fear that the restaurant might become an attractive "hang-out" for the students and other " 'teenagers," and also that it might create a traffic hazard. It declared that the proposed use would destroy the complexion of the area and would not be in keeping with the general characteristics of the neighborhood.

The Court of Common Pleas held a hearing and took additional testimony which greatly clarified the situation, explained how the restaurant and the parking area would be operated, and demonstrated that the objections voiced by the Board were without reasonable foundation. The court decided that there was no testimony whatever before the Board that would support its findings, which were based solely upon unsworn statements of counsel. It called attention to the fact that Food Corporation planned to take all necessary precautions for the elimination of dirt, garbage, noise, and excessive lighting, which might in any way disturb the residents of the Englewood Street houses, that the entrances and exits to the parking area would all be on Cottman Street and not on the rear driveway, and that the off-street parking facilities would tend to re-

lieve rather than create traffic congestion. It pointed out that the objections which had been raised by the neighbors were really concerned with the operation of the restaurant and not with the accessory parking area, but, since the restaurant was a permitted use, such objections could not be given consideration unless its subsequent operation proved to be an enjoinable nuisance. The court characterized the Board's finding that the restaurant would destroy the complexion of the area as "arbitrary, capricious and incorrect." Finally, the court concluded that there was nothing in the entire project which could be deemed to be any more offensive or detrimental to the neighborhood than other commercial uses which could be put there as a matter of right. It therefore held that the Zoning Board had been guilty of an abuse of discretion in refusing the certificate, and it added that, based on the additional testimony which it had heard, it was independently of opinion that the certificate for the use of a portion of the lot for off-street parking should be granted.

Since the enabling Act of May 6, 1929, P. L. 1551, dealing with zoning ordinances of cities of the first class, does not provide for any appeal from the court below, our review is merely as on certiorari, and we examine the record only to see whether there is evidence to sustain the court's findings and whether the proceeding is free from a violation of law and any manifest abuse of discretion: *Rolling Green Golf Club Case*, 374 Pa. 450, 458, 97 A. 2d 523, 527; *Walker v. Zoning Board of Adjustment*, 380 Pa. 228, 230, 110 A. 2d 414, 415. In the present instance the findings are fully sustained by the evidence before the court and the proceedings are free from any violation of law or abuse of discretion. Accordingly the decree is affirmed at the cost of the intervenor-appellant.