## Urbano v. Cummins

Before Groshens, Ditter and Smillie, JJ.

*J. DeYoung*, for plaintiff.

*James E. Meneses*, for defendant.

DITTER, J., August 17, 1964.—This is an appeal from the refusal of a zoning board of adjustment to grant two variances which would permit the expansion of nonconforming uses in a residential zone. Appellants wish to invade a required side yard and expand the building area presently devoted to three separate uses, none of which are allowed under the

code. Appellants suggest that the decision of the board should be set aside because the board failed to render a decision within the prescribed 45-day period and because the board refused to grant the variances despite an alleged finding that hardship existed.

Appellants own three small buildings on a tract of land which is approximately 365 feet in depth and which has a frontage of 100 feet on Route 202, a heavily travelled highway. The area is zoned R-2 Residential. In one of the buildings, appellants operate a diner, while in another there is a real estate office and an apartment. The third is a woodshed, and it is used for storage.

Appellants desire to raze these three buildings and replace them with a single, large structure which would occupy almost 60 percent more ground than occupied by those to be removed. The proposed building would reestablish the present facilities and add a dining room, banquet room, kitchen, and additional office or apartment spaces. In addition, the new structure would come to within four feet of the property line in violation of the ordinance's side-yard requirements.

At the time of the hearing before the board, a question was raised as to appellants' plans for a piece of ground which adjoins the one under consideration. Mr. Urbano stated that it would be used for ingress and egress, but specifically stated that the adjacent lot was not included in the application for a variance then before the board. The board asked for the details as to how the adjacent lot was to be laid out and appellant agreed to furnish plans to the board. In addition, Mr. Urbano agreed to furnish plans to show the elevations and appearance of the building he desired to erect.

The public hearing on appellants' application for the variances was held in October, 1962, and the board's decision was not rendered until September 19, 1963.

In the meantime, there were additional meetings between the board and Mr. Urbano in order to resolve questions and consider proposals as to the plans for the adjoining property. No agreement was ever reached and the board refused the variance, indicating that one of the important factors for its decision was the appellants' refusal to agree to suggestions made by the board as to the layout of the adjoining lot.

Section 2007(f) of the Second Class Township Code, Act of August 25, 1959, P. L. 753, 53 PS §67007(f), deals with the powers and duties of a zoning board of adjustment, and provides: "If the Board of Adjustment does not make a decision within forty-five days after the hearing or continued hearing, it shall be deemed that such board has decided in favor of the person or township official aggrieved or affected who is seeking relief." The word "deemed" as used in this connotation means "presumed": Craig, Zoning Law, 21 Univ. of Pitt. L. Rev. 223, 232; Webster's, Third New International Dictionary (1961), 589.

The obvious purpose of the legislature in laying down the 45-day presumption was to prevent the stifling of a grant of a variance or a special exception through the inaction of the zoning board. In First Church of Christ vs. Jenkintown Borough, 77 Montg. 39 (1960), one of the reasons we gave for reversing the decision of a zoning board was its failure to comply with similar wording in the Borough Code. In that matter, the board did not render its decision until almost three months after the date of the public hearing and President Judge Dannehower stated: "Therefore, its eventual decision was in conflict with the decision 'deemed' to have been made forty-five days after that date." The facts of the present case are readily distinguishable, however.

The notes of testimony from the public hearing indicate that the drawings submitted by appellants as to

the proposed building were not complete and, in fact, were contradictory in part to the testimony of Mr. Urbano. As a result of the paucity of details, the following took place:

"Mr. Bixby [Attorney for Appellants] : . . . I assume that Mr. Urbano can have a sketch made up which would be submitted to the Board if you feel that would help to reach a decision. We don't have it at the present time. We have just been working with the dimensions and the proposed use.

A. [Roland Urbano, one of the Appellants] : Oh, yes. Naturally we'd submit a complete plan showing the exteriors and everything and so forth.

Mr. Bixby: Well if the Board will hold its decision up, I'll see that the proposed structure is submitted, if that is what you want, I assume.

Mr. McCracken [a member of the Board] : Yes. It would aid us in gaining a better picture.

Mr. Bixby: All right, we will do that."

On November 29, 1962, 44 days after the hearing before the board, appellants agreed that the time for the board's decision should be extended so that appellants could submit additional plans, the board agreeing to render a decision within 30 days of November 29, 1962. These plans were not submitted and no decision was rendered. On February 20, 1963, the solicitor for the board wrote to the appellants reminding them of that fact. A plan dated February 27, 1963, was then forwarded to the board. It showed the adjacent lot laid out for parking purposes although, at the time of the hearing, appellants had indicated their intention to use this ground solely for ingress and egress. We need not decide what the outcome would have been had appellants brought this appeal after 30 days extension, and without submitting any additional plans to the board. Apparently, conferences continued between the board and the appellants. As late as August 21,

1963, appellants' present attorney was still offering counter-proposals to the board as to the use of the adjacent premises. So far as we can tell, appellants never did submit the plans as to the lot in question, the plans which would show the "exteriors and everything and so forth." The board's decision followed the last letter from appellants' attorney by 29 days. The board's decision merely mentions that there were many meetings between the board and Mr. Urbano after the public hearing and we have determined the subject matter of those meetings from letters attached to the briefs of appellants and the board. The letters attached to appellants' brief alone are sufficient to estop appellants from denying that the decision was delayed because of the appellants' exhortations.

Although the conferences, meetings, telephone calls, and correspondence were not public hearings, as required by the code, we have no difficulty in finding that they constituted "continued hearings" as that term is used by the section of the code which requires decisions within 45 days. Where, as here, the applicant requests conferences with the board, meets with it, makes proposals to it, all of which delays the issuance of the board's decision, the board should not be set aside merely because its findings and order were not uttered within 45 days from the last public hearing. An applicant can waive the benefits of this requirement: Church of Our Lord Jesus Christ, Inc., v. Lower Merion Twp., 84 Montg. 13, 15 (1964). We find that appellants did so under the circumstances of this case.

In addition, although a zoning board's decision will be deemed to favor the applicant or township official aggrieved if not rendered within 45 days, the code does not prevent an appeal from such a decision and its reversal by the court: Craig, Zoning Law, supra.

The second question to be determined by this court is whether the Zoning Board of Adjustment of Upper

Merion Township was guilty of a manifest abuse of discretion or an error of law in denying appellants' application for a variance. Although we find that the zoning board reached the correct decision, it should not have considered the possible use of the adjacent tract, as this was a matter not properly before the board.

The two lots are contiguous and lie along the southern edge of DeKalb Pike, Route 202, in a section which is zoned R-2 Residential. That area which has been referred to as the "adjoining" or "adjacent" tract is the more easterly of the two and, in addition to the frontage on DeKalb Pike, also opens on Forge Road. In its decision, the board discussed this site and expressed the fear that it would be used for the parking of cars and trucks by the patrons of the proposed commercial establishments, a use not permitted in an R-2 Residential District. The board indicated that it might allow appellants to erect their building if there was an agreement on a specific plan governing the layout of the adjacent tract. The board thought in terms of a driveway to furnish ingress and egress to the commercial establishment while appellants apparently wanted to use the entire adjacent tract for parking. When it became obvious that no agreement could be reached as to the adjacent property, the board refused the variance as to the premises in question.

The only matter before the board, and that on which its sights should have been trained, concerned the lot on which appellants desired to build. The board was wrong when it allowed its attention to be diverted to another tract and doubly wrong when it attempted to condition a grant of the variances for the subject property upon its approval of the use of the adjacent lot for a purpose not authorized by the zoning ordinance. This is not the case of a land-locked owner who wanted a drive across residential property, as in Rolling Green

Golf Club Case, 374 Pa. 450 (1953), nor a case where a driveway on residential property would change the character of the neighborhood, as discussed in Prospect Park Borough v. McClaskey, 151 Pa. Superior Ct. 467, 471 (1943). While it is true that the board is charged with the duty of granting variances so that the spirit of the ordinance will be observed and substantial justice done, neither geographic proximity nor common ownership gave it the power to pass upon a matter specifically excluded from consideration by the applicant. There must be some common thread which joins the tracts, stemming from an unavoidable conflict between the proposed and permitted use. Anticipating that possibly the ordinance will be violated in the future is not enough: Coyne v. Prichard, 272 Pa. 424 (1922). However, the board's mistake was harmless error in view of the legal insufficiency of the evidence required for the grant of the variances.

Actually the matter before the board and that to which it should have given its attention was the extension of a nonconforming use. Nonconforming buildings, structures, uses, and lots are controlled by Article XVI of the ordinance.

Section 1600-B provides that a building of which a lawful nonconforming use is made may be extended by a total of 25 percent. It may or may not be sound to interpret this section to permit an owner to combine the floor-spaces of three buildings in order to determine how large he can build a new building. Be that as it may, it was on that basis that the computations were made. The attorney who represented the applicant, however, used the wrong dimensions for one of the existing buildings, made an error in multiplication as to another, and failed to take into consideration the planned basement for the new building. What applicants really requested was permission to raze three buildings whose total floor area is 6,652 square feet

and replace them with a building whose total floor area would be 14,400 square feet. In terms of ground area covered, the present buildings occupy 3,012 square feet and the new building would require 4,800 square feet. Since the expansion desired exceeded that permitted, appellants were really seeking a variance to the non-conforming use provisions of the ordinance. However, there was no evidence to show why such an expansion should be allowed, nothing to indicate a peculiar hardship if their new building was limited to the size permitted by the ordinance. One might guess that the hardship would be appellants' desire to build commercial facilities large enough to make more money than could be obtained with a small building. Such a motive is understandable, but legally insufficient.

"Business operators persist in believing that a variance can be justified by an opportunity to make money, or, conversely, that it is an abuse of discretion to deny them the opportunity. Such pre-occupation with commerce is not at all what we mean by a variance or by the kind of hardship that justifies one": Cresko Zoning Case, 400 Pa. 467, 471 (1960). Where it appears that the property can be readily utilized in an authorized way, the fact that it could be more lucratively employed in an unauthorized way is of no aid in meeting the test of unique or peculiar hardship: Crafton Borough Appeal, 409 Pa. 82 (1962). On the other hand, economic hardship is enough if, for instance, impractical sums would have to be expended to change a nonconforming use to a conforming one: O'Neill v. Philadelphia Zoning Board of Adjustment, 348 Pa. 379 (1956). In the present matter, the only hardship which can even be inferred is the necessity for a variance to increase the financial returns from the lot. This does not meet the test.

Appellants also sought a variance from the provisions relating to side yard requirements. The proposed

plot plan, as submitted to the zoning board at the time of the public hearing, shows that the tract is 100 feet wide and that the proposed building has a width of 40 feet, leaving a total of 60 feet of open space between the sides of the building and the sides of the lot. The zoning ordinance, in those sections relating to R-2 Residential Districts, states that on each interior lot, such as is this tract, there shall be two side yards having an aggregate width of not less than 25 feet, neither side yard having a width less than 10 feet. Appellant wants to avoid this requirement and place his building within 4 feet of the side of the tract. There was no showing of a hardship of any sort to indicate why appellants should locate the building 6 feet closer to the edge of the tract than allowed by the zoning ordinance. Nothing appears in the record, not even a showing of convenience, that would suggest a reason for locating the building in such a manner. In the absence of a demonstration of any valid hardship, appellant has clearly failed in his burden and in view of such a failure, the board would have committed error as a matter of law had this variance been granted.

And now, August 17, 1964, upon consideration of oral arguments and the briefs of counsel, and for the reasons given in the above opinion, appellants' objections to the decision of the Zoning Board of Adjustment of Upper Merion Township, dated September 19, 1963, are dismissed.