School Lane Hills, Inc., Appellant, *v.* East Hempfield Township Zoning Hearing Board, Appellee.

Argued February 5, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, MENCER, ROGERS and BLATT. Judge WILKINSON, JR. did not participate.

*T. Roberts Appel, II,* with him *James W. Appel,* and *Appel, Herr & Appel,* for appellant.

*Charles B. Grove, Jr.,* with him *May, Grove, Stork & Blakinger,* for appellee.

*David E. Alspach,* with him *Alfred C. Alspach* and *Alspach and Ryder,* for intervening appellee, St. Paul's United Church of Christ.

OPINION BY PRESIDENT JUDGE BOWMAN, April 29, 1975:

Aaron J. Brubaker and H. Arlene Brubaker are the record owners of an 84 acre tract of land, situated in East Hempfield Township, Lancaster County. At some date prior to December 11, 1973, the Brubakers entered into an agreement to convey this property to St. Paul's United Church of Christ (St. Paul's). St Paul's initially contemplated the development of the Brubaker tract into a church-community center project, containing the following facilities: a church; apartment units for the elderly; two nursing care units, one providing full care and the other intermediate care; a rehabilitation center for crippled childen and adults; and an occupational therapy and training center for retarded persons. Although the proposed project found its impetus in the membership of St. Paul's, two other philanthropic organizations involved themselves. The Easter Seal Society intends to assume the sponsorship and maintenance of the rehabilitation center, while the Child Development Center will do the same with regards to the therapy and training center (which, incidentally, will bear its name).

Under the East Hempfield Township Zoning Ordinance (ordinance), the Brubaker property lies in an R-2 Residential District. None of the uses proposed in St. Paul's project is a "permitted use" in such a district. Therefore, on December 11, 1973, the Brubakers, on behalf of St. Paul's, applied to the East Hempfield Township Zoning Hearing Board for a special exception. This application recited that all aspects of St. Paul's project

fell within uses allowed by special exception of "appropriate public uses." School Lane Hills, Inc. (appellant), the developer of a tract of land which abuts the Brubaker property, opposed the entire request for special exception and intervened in the hearing before the Board.

"Appropriate public uses" are defined by the ordinance as follows:

> "Public Uses, Appropriate: Includes public and semipublic uses of a *welfare and educational nature,* such as schools, parks, churches, cemeteries, civic centers, historical restorations, fire stations, municipal buildings, essential public utilities that require enclosure within a building; non-profit recreational facilities; and easements for alleys, streets, and public utility rights-of-way." (Emphasis added.)

By a decision dated March 18, 1974, the Board denied a special exception as to the apartment and nursing care units, but granted same as to the rehabilitation and occupational training and therapy centers.[1] That part of the decision favorable to St. Paul's (and its co-developers) was predicated upon the Board's finding that the two centers were "basically education in nature."

Both sides appealed from the respective adverse consequences of the Board's decision. On July 5, 1974, the Court of Common Pleas of Lancaster County dismissed both appeals and affirmed the Board's decision. The court's decision and order were based entirely upon the evidence received by the Board. Thereafter, School Lane Hills filed an appeal with this Court.[2]

"Where . . . the court below has taken no additional evidence, our scope of review is limited to a determination of whether or not the Board committed an abuse of

---

1. The church itself has apparently not been an area of contention between the parties, although the Board specifically found it an "appropriate public use."

2. Neither St. Paul's, the Easter Seal Society, nor the Child Development Center has appealed from the order of the lower court.

discretion or an error of law." *Alfano v. Zoning Hearing Board of Marple Township,* 14 Pa. Commonwealth Ct. 334, 336, 324 A.2d 851, 852 (1974).

Appellant argues that the Board abused its discretion and/or committed an error of law in that no evidence was presented at the hearing which would support the Board's conclusion that the Easter Seal rehabilitation facility would be "basically educational in nature." The ordinance clearly places the burden of proof in all requests for special exceptions "upon the applicant to establish compliance with all requirements of the ordinance pertaining to the grant of a special exception and all provisions applicable thereto." The only testimony presented to the Board which related to the day-to-day functioning of the rehabilitation center was elicited from the executive director of the Easter Seal Society:

> "We might be treating someone with a sprained back, rehabilitating a stroke patient, things of that nature. Basically, ours is an out-patient program."

Even under the broadest definition of "education," this Court cannot find, within the parameters of this testimony, any support for the Board's conclusion.

> " 'The word [education] taken in its full sense, is a broad, comprehensive term, and may be particularly directed to either mental, moral, or physical faculties, but in its broadest and best sense it embraces them all, and includes, not merely the instructions received at school, college, or university, but the whole course of training—moral, intellectual, and physical.' "[3]

Clearly, the emphasis of the proposed rehabilitation center, as described in the quoted testimony, *supra,* lies not with training, an *improvement in* the normal human condition, but rather with treatment, a *restoration to* a normal human condition. As the record stands, the rehabilitation center is not even collaterally educational in nature,

---

3. *Gilden Appeal,* 406 Pa. 484, 492, 178 A.2d 562, 566 (1962).

let alone "basically educational in nature," as the Board so found.

Further, the quoted testimony neatly fits the rehabilitation center within the definition of "sanitarium," posed by the Supreme Center in *Walker v. Zoning Board of Adjustment,* 380 Pa. 228, 110 A.2d 414 (1955):

> " 'A health station or retreat; an institution for the recuperation and treatment of persons suffering from physical or mental disorders.' " 380 Pa. at 232, 110 A.2d at 416.

Under the ordinance, sanitaria are included within the definition of "hospitals," a use not allowed by right or by way of special exception in an R-2 district. While "appropriate public uses" include uses of a "welfare" nature, and this facility would certainly further the welfare of the community, the ordinance's specific reference to "hospitals" as a use distinct from "appropriate public uses,"[4] precludes a finding that "hospitals" were intended to fall within the scope of "appropriate public uses."

Appellant contends that the "sanitarium" argument has equal application to the Child Development Center. With this, we do not agree. The evidence presented to the Board defined the purpose of this Center as the training of retarded youths to assume a positive role in society, by providing them with certain industrial skills. While such skills may appear simplistic to a "normal" person, their assimilation nonetheless represents a great improvement in the normal human condition of the trainees. The nature of the Child Development Center is no less educational than that of the most demanding university.

Finally, appellant argues that the action of the Board in granting a special exception was premature, given the uncertainties in bringing this project to fruition. Appel-

---

4. "Hospitals" never appear as even a specially excepted use in any of the residential districts set out in the ordinance. They first appear as a permitted use in C-2 Commercial Districts, a much less restricted zone.

lant emphasizes the failure of the applicants to present a finalized plan and the estimated time required to complete the project if and when approval is granted. This Court believes neither of these factors assumes relevancy in a hearing on an application for special exception. While the burden of proof in such a hearing lies with the applicant, that burden is satisfied when the evidence presented sufficiently establishes the scope and purpose of the proposed use so as to allow the Board to render a just and reasoned decision. Any further requirements, involving additional time and expense, would ultimately serve to discourage landowners and developers from attempting to obtain a special exception unless they were virtually guaranteed positive responses to their applications.

To summarize, the Child Development Center is "basically educational in nature," and clearly qualifies under the specially excepted use, "appropriate public uses." Although the evidence presented to the Board precludes a similar finding as to the Easter Seal rehabilitation center, this Court is reluctant, given the beneficial purpose of the Center, as well as the inadequacies of the record, to conclusively deny the applicants any further opportunity to prove the merits of this phase of their application.

The order of the Court of Common Pleas of Lancaster County is hereby reversed, insofar as it affirmed that part of the decision of the East Hempfield Township Zoning Hearing Board which granted a special exception for the construction of the Easter Seal Society rehabilitation center. It is further ordered that these proceedings be remanded to said Court of Common Pleas for the purpose of taking additional testimony on the subject of the Easter Seal Society rehabilitation center, with leave to further remand said proceedings to the East Hempfield Township Zoning Hearing Board, for this same purpose. The order of said Court of Common Pleas, as so modified, is hereby affirmed.